697 F.2d 511
 In re GRAND JURY MATTER.
Garden Court Nursing Home, Inc. and Simon, Sidney D.,
Appellants and Cross Appellees,
Commonwealth of Pennsylvania, Department of Revenue,
Appellees and Cross Appellants.
 Nos. 82-1229, 82-1230.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 15, 1982.
Decided Dec. 30, 1982.
Rehearing and Rehearing In Banc Denied Jan. 31, 1983.
 
 Edward H. Rubenstone (argued), Richard A. Sprague, Bruce L. Thall, Sprague & Rubenstone, Philadelphia, Pa., for appellants and cross appellees.
 Christos A. Katsaounis (argued), Com. of Pa., Dept. of Revenue, Legal Bureau, Harrisburg, Pa., for appellees and cross appellants.
 Before SEITZ, Chief Judge, GARTH and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 Garden Court Nursing Home, Inc. and Sidney D. Simon, its owner and operator, appeal from an order of the district court requiring the United States to disclose auditors' analyses of the books and records of Garden Court to the Commonwealth of Pennsylvania, Department of Revenue (Department). The Department cross appeals from an order of the district court denying it access to other grand jury materials. This court has jurisdiction under 28 U.S.C. Sec. 1291 (1976).
 
 I.
 
 2
 A federal grand jury investigated the activities of Simon and Garden Court. Simon was indicted for mail fraud and making false statements to the federal government. The gravamen of these offenses was that Simon fraudulently sought to obtain Medicaid reimbursements to which Garden Court was not legally entitled. Simon pled guilty to three of the twenty counts of the indictment. Following this plea, the Department, in connection with an investigation of the state income tax liability of Simon and the corporations he controlled, filed a petition in the district court to examine and copy grand jury materials. It sought disclosure of "all of the grand jury materials pertinent to its investigation." Simon and Garden Court objected to disclosure.
 
 
 3
 The district court held that Federal Rule of Criminal Procedure 6(e)(2) prohibited the disclosure of witness interviews, conducted outside the grand jury's presence but presented to it, and of transcripts of grand jury testimony. However, the court held that invoices possessed by the grand jury and auditors' analyses of Garden Court's books and records, prepared to assist the grand jury were outside the scope of the rule and could therefore be disclosed. The results of the analyses, though apparently not the analyses themselves, were presented to the grand jury.
 
 
 4
 Simon and Garden Court appeal, arguing that the auditors' analyses should not be disclosed. The Department of Revenue cross appeals, arguing that all of the requested materials should be disclosed. Since Simon and Garden Court do not contest the disclosure of the invoices, only the disclosure of the transcripts, witness interviews, and auditors' analyses are at issue in this appeal.
 
 II.
 
 5
 With specified exceptions, Rule 6(e)(2) prohibits the disclosure of "matters occurring before the grand jury." Since the rule does not prohibit the disclosure of other "matters", we must first determine whether the materials at issue in this appeal are within the scope of the rule.
 
 
 6
 In In re Grand Jury Matter, 682 F.2d 61, 63 (3d Cir.1982) (Catania), this court stated that Rule 6(e)(2) "applies to anything which may reveal what occurred before the grand jury." Thus, if disclosure of the materials in this case would do so, Rule 6(e)(2) applies.
 
 
 7
 Were we writing on a clean slate, we might well hold that disclosure of any material generated in connection with a grand jury proceeding is governed by Rule 6(e)(2). Such a rule would be easier to apply and produce more certain results than the rule we apply today. However, the prior holdings of this court prevent us from adopting this rule. See, e.g., Catania, supra, at 64 n. 4 (disclosure of draft indictment not governed by Rule 6(e)(2); In re Grand Jury Proceedings, 486 F.2d 85, 92 (3d Cir.1973) (Schofield I ) (disclosure of affidavit filed by government to enforce grand jury subpoena that states that subpoenaed items are relevant to grand jury investigation not governed by the rule). We believe that disclosure of the materials at issue in this appeal would reveal what occurred before the grand jury. Thus, we hold that the disclosure of all of these materials is governed by Rule 6(e)(2).
 
 
 8
 There is no question that disclosing grand jury transcripts reveals the contents of grand jury proceedings. Their disclosure is, therefore, governed by Rule 6(e)(2). See Catania, supra, at 65. No meaningful distinction can be drawn between transcripts and witness interviews conducted outside the grand jury's presence but presented to it. Thus, Rule 6(e)(2) governs the disclosure of the witness interviews.
 
 
 9
 The district court held that disclosure of the auditors' analyses would not reveal what was before the grand jury. We hold that this finding is clearly erroneous. In our view, given the nature of the crimes for which Simon was indicted, a reasonable person would conclude that the audits or their results were presented to the grand jury. Thus disclosure of the auditors' analyses is governed by Rule 6(e)(2).
 
 
 10
 In determining whether disclosure of the materials in this case was governed by Rule 6(e)(2), the district court relied heavily on In re Grand Jury Matter, 630 F.2d 996 (3d Cir.1980) (SCI ), cert. denied, 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981). There, as in Catania, supra, this court considered whether Rule 6(e)(2) governed the disclosure of materials created independently of the grand jury process. These cases stand for the proposition that such documents do not automatically become "matters occurring before a grand jury" when they are subpoenaed by or transmitted to a grand jury. SCI, supra, at 1000; Catania, supra, at 63. In addition, the Catania court relied on SCI in determining that disclosure of a prosecution summary of independently created documents was not governed by Rule 6(e)(2).
 
 
 11
 The district court's reliance on SCI was, however, misplaced. None of the materials at issue in this appeal exist independently of the grand jury process. Moreover, although the district court found that the auditors' analyses were merely summaries of the books and records of Garden Court, our examination of these materials reveals that this finding is clearly erroneous. These analyses are not merely summaries that reveal nothing about what transpired before the grand jury. Rather they contain the auditors' conclusions about whether particular expenses are legitimately attributable to the operation of Garden Court.
 
 
 12
 In determining the scope of Rule 6(e) the district court also examined whether disclosure would conflict with the policies underlying the rule. Such an inquiry is appropriate to determine whether material that is covered by the rule may be disclosed, see Douglas Oil v. Petrol Stops Northwest, 441 U.S. 211, 213, 222-23, 99 S.Ct. 1667, 1669, 1674, 60 L.Ed.2d 156 (1979), not whether the rule applies at all. Because we conclude that disclosure of all of the materials in this case is within the scope of Rule 6(e)(2), disclosure is prohibited unless one of the exceptions to the rule applies. Thus, we must next determine whether any of the exceptions to the rule permits disclosure.
 
 III.
 
 13
 The Department argues that its investigation is preliminary to a judicial proceeding because it is likely that the investigation will produce litigation. Disclosure is in the Department's view therefore permissible under 6(e)(3)(C) which permits disclosure when "so directed by a court preliminarily to or in connection with a judicial proceeding." However, even if the Department's contention that it falls within the literal terms of that exception is correct, disclosure is only permissible if in addition the three pronged test enunciated by the Supreme Court in Douglas Oil v. Petrol Stops Northwest, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979) is satisfied. There the Court stated that parties seeking disclosure under rule 6(e) have the burden of showing "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for secrecy, and that their request is structured to cover only the material so needed." Id. at 222, 99 S.Ct. at 1674. Although Douglas dealt with disclosure to a private party, this court has applied the test to public officials as well. Catania, supra, at 63-64, 66.
 
 
 14
 As the District Court correctly found, the Department of Revenue has failed to satisfy the first prong of the Douglas test. The essence of the Department's argument is that disclosure would save it time and effort since its investigation will require it to do much of the same work done by the grand jury.[1] However, this does not constitute a showing of possible prejudice. As this court recently stated, "Access to grand jury materials cannot be had merely for the convenience of the state investigation." Catania, supra at 66. See also In re Disclosure of Evidence, 650 F.2d 599, 601 (5th Cir.1981) ("Without a showing that disclosure is necessary to avoid possible injustice ... the moving party cannot establish particularized need.")
 
 
 15
 The Department of Revenue argues that because the grand jury had completed its work, the only possible reason to keep the grand jury materials secret is the need to encourage the public to provide information to future grand juries. Even this policy is not, in the Department's view, implicated in this case because it is prohibited by law from publicly disclosing any information obtained during an investigation. Thus, the Department argues that its need for the materials outweighs this inconsequential need for secrecy.
 
 
 16
 Although we agree that these factors reduce the need for secrecy, we are not as confident as the Department that disclosure of the materials it requests would not to at least some degree lessen the public's confidence in grand jury secrecy. More importantly, the Department's argument is misplaced since the Douglas balancing test is applicable only after the moving party establishes possible prejudice. Since the Department has not established possible prejudice, we hold that none of the requested materials may be disclosed.
 
 
 17
 The judgment of the district court will be affirmed insofar as it denies disclosure of the transcripts and witness interviews, and reversed insofar as it approves the release of the auditors' analyses.
 
 GARTH, Circuit Judge, concurring:
 
 18
 While I agree with the conclusion reached by the Majority Opinion, I cannot be sure that the analysis by which we arrived at that conclusion furnishes the necessary guidelines for the district courts' next Fed.R.Crim.P.Rule 6(e) case. I therefore believe it advisable to set forth my understanding as to why we have denied the Department access to the various auditors' analyses and workpapers which it has sought.
 
 I.
 
 19
 First, let me state that I have no problem with the Majority's discussion denying disclosure of transcripts and witness interviews. Douglas Oil v. Petrol Stops Northwest, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979) clearly controls that request by the Department and, as the Majority correctly points out, the Douglas Oil, supra, requirements have not been met. Thus the transcripts and witness interviews cannot be divulged, disclosed or given to the Department.
 
 
 20
 On the other hand, the question of whether disclosure of the audit workpapers should be ordered, requires an examination of this court's authorities dealing with the conditions under which such disclosures may be made.
 
 
 21
 In In re Grand Jury Matter, 630 F.2d 996 (3d Cir.1980) (SCI ) the New Jersey State Commission of Investigation (SCI ) subpoenaed the records of two corporations. Many of the records sought were in the possession of a federal grand jury. The corporations claimed that they could not comply with the subpoena as to those business records in the possession of the grand jury. The SCI thereupon moved before the district court to obtain these records. The district court held that SCI had failed to make the showing of "particular need" or "compelling necessity" required to overcome Rule 6(e)'s policy of secrecy. On appeal, this court vacated the district court's order and remanded the proceeding to the district court, because the record did not contain the business records in question. On remand, the district court was directed to evaluate whether disclosure of the business records would reveal the content of the grand jury proceedings.
 
 
 22
 In remanding, Judge Adams, writing for the panel said that Rule 6(e) was designed to "protect from disclosure only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process." Id., 630 F.2d at 1000. The court also noted that mere review of a particular document by the grand jury does not automatically convert that document into a "matter occurring before the grand jury." Id. "Documents such as the business records sought by [SCI] ... are created for purposes independent of grand jury investigations, and such records may have legitimate uses unrelated to the substance of the grand jury proceedings." Id. The court concluded that once the inquiring party demonstrated a legitimate purpose flowing from its investigatory authority, access to the records could only be refused if it would compromise the secrecy of the grand jury. Thus, SCI is authority for the proposition that, without more, the books and records of the parties being investigated, independently produced in the regular course of business, but subpoenaed by the grand jury, may be disclosed, if, on district court evaluation, they do not reveal the content of the grand jury proceedings.
 
 
 23
 Two years later this court decided In re Grand Jury Matter, 682 F.2d 61 (3d Cir.1982) (Catania). In Catania, the United States District Attorney moved for disclosure to the (state) district attorney of materials presented to the federal grand jury in the course of an investigation into voter fraud by the federal authorities from which no prosecutions resulted. Those materials included tape recordings and transcripts of consensually monitored conversations, FBI 302's (witness interview forms), documents obtained without grand jury subpoena, and a prosecution memorandum summarizing the information compiled in the course of the FBI investigation. In addition, transcripts of grand jury witness testimony were also sought. The district court granted the Government's motion in all respects. The district court found that the witness transcripts could be disclosed pursuant to the exception to disclosure found in Rule 6(e)(3)(C)(i) (disclosure preliminary to a judicial proceeding and prosecution prejudiced without disclosure). Catania, supra, 682 F.2d at 65-67. As to the other materials requested, the district court found that they were the product of an FBI investigation, were not generated by the grand jury, and had not been requested or subpoenaed by the grand jury. The district court also found that the (state) district attorney did not know whether any or all of these requested materials had ever been before the grand jury. Id. at 64. On appeal, this court affirmed the district court's ruling permitting disclosure of all but the grand jury witness transcripts. As to those, the court reversed.[1] In affirming the disclosure of all but the witness transcripts, the court reaffirmed the principle announced in SCI, supra: the "disclosure of information obtained from a source independent of the grand jury proceeding, such as a prior government investigation, does not violate Rule 6(e)." Id., 682 F.2d at 64 quoting In re Grand Jury Investigation, 610 F.2d 202, 217 (5th Cir.1980). In addition, the court noted that the information developed by the FBI in Catania, like the books and records requested in SCI, "although perhaps developed with an eye toward ultimate use on a grand jury proceeding, exists apart from and was developed independently grand jury processes." Id., 682 F.2d at 64. Thus, since the material the (state) District Attorney received in Catania, supra, were the fruits of a federal police investigation, not a federal grand jury investigation, those materials were outside the scope of the disclosure rules of Rule 6(e).II.
 
 
 24
 Reading SCI and Catania together, my understanding is that if the requested materials are not generated by, or for, the grand jury and if they are independently produced in the regular course of business, Rule 6(e) does not prevent disclosure of such materials as they are not then "matters occurring before the grand jury." Indeed, it may very well have been these teachings that convinced Garden Court it could not resist the disclosure of its invoices which the Department desired and which apparently were furnished to the Department without dispute. Measured by the SCI/Catania test noted above, no reason would exist to deny them to the Department.
 
 
 25
 However, the audit workpapers which Garden Court claims may not be disclosed, stand on a different footing. My examination of the workpapers and the accounting analyses reveals that these papers are not merely bare summaries of the books and records of Simon and Garden Court. It is undisputed that the analyses and the accompanying workpapers were prepared and created to assist the grand jury in its investigation of Simon and Garden Court. The district court, which reviewed a sample of these papers, characterized them as being "summaries of books and records generated in the ordinary course of business." (App. at 14a).[2] Had the analyses consisted only of summaries of books and records and had they contained nothing else, they would not have fallen afoul of Rule 6(e) despite the fact that they were generated by the grand jury. SCI, supra. However, even a cursory examination of the audit workpapers disclose that these papers are replete with explanations of the items extracted from the books and records--explanations focusing on the specific investigation conducted by the grand jury.
 
 
 26
 Moreover, the selection of particular items and their placement in particular categories was obviously undertaken so as to best comport with the thrust of the grand jury investigation. For example, items in the exhibits are categorized as "lawful" or "unlawful." The various accounts are broken down to indicate those items which the auditors felt constituted duplicate billings, and evidence of other irregularities. Finally, the auditor's conclusions and impressions, depending as they do on witness interviews, carry forward explanations of the various entries, and in effect, argue for a specific conclusion. Thus, it is virtually impossible to separate testimony and explanatory conclusions from the notations and figures making up the analyses. Indeed, the audits themselves are apparently structured upon those interviews. I therefore seriously doubt, because of the very nature of the information given and used, that the identity of the witnesses, or the summaries of the information they gave the auditors, could ever successfully be redacted or excised.
 
 
 27
 It is therefore manifest to me that SCI, which would permit the disclosure of the books and records, and by extension therefore, true summaries of these books and records, would not have permitted disclosure of audit workpapers such as these. These workpapers reflect not only witness input but judgments, interpretations and conclusions of the individuals who prepared them. Indeed, inasmuch as it was the grand jury that sought to have these audits made, it would appear somewhat anomalous if we are to refuse disclosure of the witness transcripts themselves, but were to permit disclosure of the various totals of selected items and columnar footings where these totals and footings undoubtedly appear in the transcript testimony of the auditors.
 
 
 28
 Because the audit workpapers include far more than a bare bones summary of the subpoenaed books and records, it is clear that the district court's finding to the contrary is therefore clearly erroneous.
 
 III.
 
 29
 The foregoing approach, in my opinion, provides the framework for considering the propriety of disclosure in situations like this one. It is not enough to say, as the Majority does (Maj. op. at 513) that SCI is distinguishable merely because the materials at issue in this appeal do not exist independently of the grand jury process. As I have demonstrated, materials which are "generated" by the grand jury may still be outside the confines of Rule 6(e) if they disclose nothing more than what is contained in documents independently generated in the regular course of business. Moreover, the fact that the grand jury may subpoena a particular document does not automatically bring that document within the ambit of Rule 6(e). SCI, supra.
 
 
 30
 As we made clear in SCI, supra, Catania, supra, and other cases, see e.g. In re Grand Jury Proceedings, 486 F.2d 85 (3d Cir.1973) (Schofield I ), if the documents were independently produced in the regular course of business, the court need go no further and may order disclosure. If the documents were independently produced but actually examined by the grand jury, the district court must determine whether the party seeking disclosure has sought the documents pursuant to an independent lawful investigation within the purview of Rule 6(e). If so, the district court may order disclosure.
 
 
 31
 If the documents in question were not independently generated, the district court must determine whether they contain information other than what could be found in independently generated documents. If they contain nothing more than that information in a different form, then the district court may order disclosure as if independently generated documents were sought. If the documents contain more information than may be found in independently generated documents, the district court must determine whether the documents would reveal what occurred before the grand jury. If the court finds that the documents would reveal what occurred before the grand jury, then such documents may only be disclosed if one of the exceptions to Rule 6(e) applies.
 
 
 32
 Having applied these teachings to the instant case, it is apparent to me that the audit workpapers in question may not be disclosed pursuant to Rule 6(e) as such disclosure would reveal "matters occurring before the grand jury," and the record before us does not support an exemption from the Rule 6(e) provisions. Thus, for the reasons stated above, I concur with the Majority that the order of the district court, which permitted disclosure of the audit workpapers, must be reversed, and that the order of the district court, denying the Department access to grand jury transcripts, witness lists and related materials, must be affirmed.
 
 
 
 [1]
 The Department also states that it wishes to use the materials for impeachment or to refresh recollection. This request is clearly premature since the Department has not even alleged that it plans to interview specific witnesses. See Catania, supra, at 66 (disclosure of transcripts to District Attorney premature during investigative stage)
 
 
 [1]
 This aspect of the In re Grand Jury Proceeding, 682 F.2d 61 (3d Cir.1982) (Catania ) opinion need not be discussed here inasmuch as the Douglas Oil v. Petrol Stops Northwest, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979) standard which was applied in Catania, supra, was similarly applied by the Majority in this case, and thus, this portion of Catania, supra, is not relevant to the instant discussion
 
 
 [2]
 The District Court's review was an in camera examination. The District Court ordered excised from disclosure, witness interviews and references to witnesses appearing in the audit workpapers. (App. 14a)