528 F.Supp.2d 1005 (2007)
UNITED STATES of America, Petitioner,
v.
LEE, GODDARD & DUFFY, LLP, and William A. Goddard, Respondents.
No. SA CV 06-408 DOC (RNBx).
United States District Court, C.D. California.
November 20, 2007.
*1006 Paul S. Ham, Stuart D. Gibson, U.S. Department of Justice, Washington, DC, Sandra R. Brown, Office of U.S. Attorney, Los Angeles, CA, for Petitioner.
John Steven Gordon, Quinn Emanuel Urquhart Oliver & Hedges, Los Angeles, CA, for Respondent.
ORDER ENFORCING PETITIONER'S DEMAND THAT RESPONDENTS PRODUCE ADDITIONAL DOCUMENTS AS DIRECTED BY ORDER DATED JUNE 29, 2006
DAVID O. CARTER, District Judge.
Before the Court is Petitioner the United State's (the "IRS") Demand that Respondents Produce. Additional Documents ("Demand"). After considering the responding, supporting, and replying papers, as well as oral argument by the parties, the Court hereby GRANTS enforcement of the Demand.
I. BACKGROUND
The IRS brought an enforcement action on April 18, 2006 against Respondents Lee, Goddard & Duffy, LLP ("LGD") and William A. Goddard. The IRS is investigating LGD and Goddard for potential promoter penalties under 26 U.S.C. § § 6707 and 6708 to determine whether they are liable for penalties for failure to timely register certain tax shelters and for failing to maintain a list of investors in these tax shelters as 26 U.S.C. § § 6111 and 6112 require.
Specifically, the IRS suspects that LGD and Goddard were involved with abusive tax shelters that the accounting firm KPMG LLP ("KPMG") promoted. Documents that the IRS obtained from KPMG identified LGD and Goddard as having promoted and facilitated several potentially abusive tax shelters. This documentation identified 65 investors linked to LGD and Goddard who participated in the abusive tax shelters KPMG marketed.
Based on this and other evidence, the IRS served summonses on LGD and Goddard *1007 that would require them to produce documents related to their involvement in the tax shelters KPMG marketed. LGD and Goddard did not comply with these summons, prompting the IRS to file the petition in this case. The Court issued an Order to Show Cause why the testimony and production of the documents requested in the IRS summons should not be compelled on April 19, 2006, and Respondents filed such a response on May 8, 2006. After receiving a reply memorandum from the Government and hearing oral argument on the matter, the Court issued a Minute Order on June 29, 2006 granting the IRS's petition to enforce the internal revenue summonses at issue. In its Minute Order, the Court gave Respondents thirty days from the date of that order to comply with the IRS summonses.
Between July 2006 and January 2007, LGD produced approximately 10,000 pages of documents responsive to the summons issued to it and Goddard asserts that he does not possess any responsive documents. The IRS is concerned that Respondents have not produced all responsive documents and indicated as such in a letter to Respondents' counsel on February 5, 2007. The parties' attorneys exchanged letters for approximately four months disputing whether LGD has complied in full with the Court's order enforcing the summons and debating the appropriate means for resolving this dispute. On July 23, 2007, the Court held a status conference regarding this dispute. During this status conference, the parties reached a resolution about how to present the dispute to the Court for resolution. As per that resolution, the parties submitted briefing on the remaining responsive documents sought by the IRS and presented oral argument in a hearing on November 19, 2007 regarding the Petitioner's Demand that Respondents Produce Additional Documents.
II. LEGAL STANDARD
Section 7602(a) of the Internal Revenue Code authorizes the Secretary of Treasury to summons, examine and inspect the books and records of any individual in order to ascertain and collect on potential tax liabilities. 26 U.S.C. § 7602(a). Because these summonses are administrative in nature, the Code also provides that enforcement is to be effectuated by the district courts, if necessary via the contempt power. See id. § § 7402(b), 7604; see also United States v. Gilleran, 992 F.2d 232, 233 (9th Cir.1993).
The Ninth Circuit has made clear that the standard for defeating a petition to quash and for enforcing a summons is the same. See Crystal v. United States, 172 F.3d 1141, 1143 (9th Cir.1999). In either case, the government must establish that "(1) the investigation will be conducted for a legitimate purpose; (2) the material being sought is relevant to that purpose; (3) the information sought is not already in the IRS's possession; and (4) the IRS complied with all the administrative steps required by the Internal Revenue Code." Id. (citing United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964)). "The government's burden is `a slight one, and may be satisfied by a declaration from the investigating agent that the Powell requirements have been met.'" Crystal, 172 F.3d at 1141 (quoting United States v. Dynavac, Inc., 6 F.3d 1407, 1414 (9th Cir.1993)).
After the government has presented a prima facie case sufficient to meet the Powell standards, a petitioner who wishes to avoid enforcement of a summons must "disprove the actual existence of a valid civil tax determination or collection purpose by the Service." United States v. Jose, 131 F.3d 1325, 1328 (9th Cir.1997) (en banc) (internal quotation marks omitted). The Ninth Circuit has repeatedly *1008 indicated that this is a very heavy burden. See, e.g., id. at 1328; Crystal, 172 F.3d at 1144; United States v. Derr, 968 F.2d 943, 945 (9th Cir.1992). To make the required showing, the petitioner "must allege specific facts and evidence to support his allegations' of bad faith or improper' purpose." Crystal, 172 F.3d at 1144 (internal quotation marks omitted). Where the petitioner is unable to mount a substantial challenge to the validity of the summons, the district court may decide the matter on the pleadings with no further proceedings, and the summons should be ordered enforced post haste. Liberty Fin. Servs. v. United States, 778 F.2d 1390, 1392-93 (9th Cir. 1985).
III. DISCUSSION
In its February 2007 letter, the IRS requested documents pertaining to the 24 remaining clients having indirect or direct participation with Respondents in tax shelter transactions for whom Respondents have not produced any responsive material. Since then, the IRS has withdrawn its request for documents as to four of the clients. The parties now seek guidance from the Court with the remaining disputed documents pertaining to transactions in which the remaining twenty clients were involved.
The IRS maintains that the disputed documents fall within the scope of the summons, and, therefore, also within the scope of the Court's June 29, 2006 Minute Order granting enforcement of the IRS summons. Respondents argue that the documents pertaining to the clients are not responsive to the IRS summons because the remaining disputed clients were not engaged in transactions that may have been the same or substantially similar to transactions covered by Notice 2000-44 or other "tax shelter transactions." The IRS explains that the "summonses demand that the respondents produce documents concerning all `tax shelter transactions,' not just transactions described in Notice 2000-44 and transactions substantially similar to those transactions." Decl. of Jeff Boice ¶ 5. The IRS further argues that the relevant transactions are not only described in or substantially similar to Notice 2000-44 transactions, but are also tax shelter transactions covered by the summonses. Respondents have divided the client transactions into Categories A, B, and C. The parties dispute the facts pertaining to these transactions and whether documents pertaining to these transactions fall within the scope of the IRS summonses.
The Court's June 29, 2006 Minute Order found that the IRS made its prima facie case sufficient to meet the Powell standards and enforce the IRS summons. Furthermore, the Minute Order explained that Respondents had not met the burden of showing bad faith or an abuse of process on the part of the IRS. Now, the IRS explains that:
Based upon my training and experience as an Internal Revenue
Agent assigned to conduct tax shelter promoter penalty investigations, and as a result of my review of documents obtained in this investigation, the descriptions are not completely accurate. Furthermore . . . the transactions described as Category A, B and C are all "tax shelters transactions" as defined in the summonses, as well as "listed transactions" described in one or more IRS notices or, as discussed in the preceding paragraph, transactions "substantially similar" to listed transactions.
Boice Decl. ¶ 10. In addition, Boice sets forth in detail the reasons that the client transactions are contained within the summons and the Court's Minute Order enforcing the summons. See Boice Decl. ¶¶ 11-17. Finally, the IRS describes Respondents tactics to try to distinguish the *1009 client transactions from tax shelter transactions:
Based on my training and experience as an Internal Revenue Agent assigned to conduct tax shelter promoter penalty investigations, I have learned that in response to IRS notices "listing" particular transactions as tax shelters, developers and promoters of tax shelters often make small, insignificant modifications to existing tax shelters, to try and bring them outside the transactions described in the IRS notice. In my experience, these modifications are no more than cosmetic changes, designed to change the appearancebut not the substance of the underlying tax shelter transactions. The descriptions of Categories A, B and C contained in the respondents' papers reflect that the respondents, and possible others who structured these transactions, engaged in this practice.
Boice Decl. ¶ 5(b). Thus, the evidence shows that the additional documents sought by the IRS are contained within the purview of the initial summons as contemplated by the IRS.
In seeking to enforce a summons, the government may meet its burden through a declaration of the investigating agent that the Powell factors have been met. See Crystal 172 F.3d at 1141; Dynavac, 6 F.3d at 1414. Here, the IRS seeks to show, through the declaration of the investigating agent, that the material sought is, within the scope of its summons previously enforced by the Court. Although this is different than an initial enforcement petition in which the investigating agent establishes a prima facie case, the effect is the same; in both cases, the` government seeks to enforce its demand for the production of documents. Here, Respondents have not alleged any specific facts or evidence to show bad faith or an improper purpose on the part of the IRS. Instead, they make nuanced arguments to attempt to distinguish the Categories A, B, and C transactions from tax shelter transactions. However, as explained by the IRS, these modifications to the transactions do not change the underlying nature of the transactions from tax shelter transactions, only the appearance of the transactions. See Boice Decl. ¶ 5(b). The burden on Respondents, to avoid enforcement of a summons is a very heavy burden. See Jose, 131 F.3d at 1328. In light of this burden at the initial enforcement stage, it would not be sensible to allow Respondents to avoid the duty to turn over documents which the IRS has demonstrated, through an investigating agent's declaration, to be responsive to the summons and the Court's prior order where, as here, Respondents rely on their attempts to draw fine distinctions between their transactions and tax shelter transactions. The IRS has thoroughly explained, through the agent's declaration, how these transactions are tax shelter transactions. See Boice Decl. There is no evidence indicating that these explanations are set forth in any manner other than a manner of good faith. Accordingly, the Court orders Respondents to produce the additional documents.
IV. DISPOSITION
Enforcement of the IRS' Demand that Respondents Produce Additional Documents is hereby GRANTED. Respondents are ordered to produce all responsive documents concerning all the remaining clients. This includes all documents related to the Category A, B, and C transactions in which the twenty remaining clients were involved.
IT IS SO ORDERED.