## SCHMIDT v. UNITED STATES.
## MAU v. SAME.
### Nos. 8450, 8467.

Circuit Court of Appeals, Sixth Circuit.

Oct. 14, 1940.

As Amended on Denial of Rehearing

Dec. 3, 1940.

Murray Seasongood and Paxton & Seasongood, all of Cincinnati, Ohio, for appellant Milton H. Schmidt.

Robert Houston French, of Cincinnati, Ohio, for appellant Haveth E. Mau.

Morison R. Waite and Joseph O'Meara, Jr., both of Cincinnati, Ohio, for Cincinnati Bar Ass'n.

James J. Waters, of Washington, D.C. (O. John Rogge, William W. Barron, and James J. Waters, all of Washington, D.C., and James H. Cleveland, of Cincinnati, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

On April 4, 1939, a grand jury was impaneled in the District Court of the Southern District of Ohio, Western Division. The oath administered to the jurors contained the following obligation, " * * * that the counsel of the United States, your own and your fellow jurors, shall be kept secret unless you are called upon in a Court of Justice to make disclosures. * * * "

This oath conformed to that prescribed for grand jurors by the law of Ohio. Ohio Gen.Code, § 13436-3.

In addition to the oath of secrecy the court in its charge to the grand jury said: "Your oath also binds you to secrecy as to all that may take place within the grand jury room unless you should in the future be called upon in a court of justice to make disclosure. You are to keep the counsel of the United States. That includes the District Attorney, the witnesses, the documents produced. You are to keep your own counsel. You are not to state outside of the grand jury room. whether you favor or do not favor the indictment of any particular person * * * and your oath of secrecy binds you not only during the period of your present service, but after you are discharged as well * * * you will, of course, permit no one whomsoever to discuss with you the question of your proceedings in the grand jury room."

On June 27, 1939, the jury returned two indictments, Nos. 5471 and 5472, respectively. These indictments charged fraudulent use of the mails and conspiracy in connection with Arlington Cemetery; and Cooper, Hagen and LeFeber were among the fifty-three defendants in each indictment. The law firm of Nichols, Wood, Marx & Ginter was employed to represent Cooper; and Haveth E. Mau, a former district attorney, was employed to represent Hagen and LeFeber. Milton H. Schmidt, a lawyer and an employee of the Marx firm, was placed directly in charge of Cooper's interest. These three defendants sought the advice of their counsel as to whether they could interrogate members of the grand jury relative to the evidence, which had been submitted to it, and upon which the indictments were based. The advice was sought with the view of presenting motions to quash the indictments, for insufficiency and incompetency of the evidence to support them.

After an examination of reported cases and the work of text-writers, and after perhaps more than one consultation with each other, Schmidt and Mau advised their clients that they had a right to interrogate members of the grand jury concerning the evidence upon which the indictments against them were found. Acting upon this advice, Cooper, Hagen and LeFeber and some of their friends approached a number of the grand jurors and after interviewing them, obtained from eight of their number affidavits which were filed on September 1, 1939, by appellants in support of motions to quash the indictments.[1]

Typical of these affidavits was that of juror Bowman, to the effect that if the district attorney had presented documentary evidence, in his possession, that these three defendants had had no connection with the Arlington Memorial Park for three years, he would not have been in favor of voting an indictment against them.

On petition to show cause, filed by United States attorneys, the court made a rule upon appellants and a number of other parties, to show cause why they should not be adjudged in contempt for filing these affidavits contrary to and in violation of the oath of said grand jurors, without application to or permission from the court, at a time when the grand jurors were subject to recall and before they were finally discharged.

In his answer Schmidt averred,—that his conduct of the entire matter had been in complete good faith and was in reliance upon the decided cases and the authorities of standard text-book writers; that he was motivated by his duty as a lawyer to present on behalf of his client every defense that the law permitted; that he had practiced law for fifteen years and that his regard for the courts had never been questioned and that his actions in the interest

---

[1] At the time these affidavits were obtained nine of the indicted defendants had not been apprehended.

of his client had been taken with the fullest regard for the dignity of the court.

Mau answered,—that after consulting the authorities and in the utmost good faith he advised his clients that they could make inquiries of the grand jurors as to the competency of the evidence before them; that he had not the slightest intention of being contemptuous or of hampering the court; that after the filing of the rule to show cause he had advised his clients to withdraw paragraphs 15 and 16 of the motions to quash which referred to the affidavits, and to withdraw the affidavits themselves; and that he wished to disavow any motive to cause contempt.

The court ruled, that the affidavits procured under the circumstances constituted an obstruction of justice in that the grand jury was subject to recall for the consideration of other cases; and that the conduct of the lawyers who participated in the filing of the pleas in abatement supported by the affidavits constituted an obstruction to justice and that they were therefore guilty of contempt.

■ We have examined the cases and texts upon which appellants relied as authority for advising their clients as they did.[2]

If we should limit our consideration to these cases alone we would find nothing therein to indicate that appellants, in advising their clients that interrogation of the grand jurors was proper, acted otherwise than in good faith. In view of what we regard as the greater weight of authority and better reasoned cases, cited in United States v. American Medical Ass'n, D.C., 26 F.Supp. 429, the utmost that can be said is that appellants acted with bad judgment, and that this alone does not constitute contumacy. In re Watts & Sachs, Petitioners, 190 U.S. 1, 23 S.Ct. 718, 47 L.Ed. 933; May Hosiery Mills v. United States District Court, 9 Cir., 64 F.2d 450, 453.

But we think that good faith reliance upon these particular cases does not altogether absolve appellants. The inquiry may not be thus limited. Appellants knew that the grand jurors had taken the oath above quoted.

The question of sincerity aside, the fact is that appellants' advice overlooked this oath and caused their clients and the grand jurors themselves to disregard it. The advice was given directly in the teeth of that clause of the oath which obligated the jurors to secrecy unless they were called upon in a court of justice to make disclosures, and of that portion of the court's charge to the grand jury hereinabove quoted. Advice which caused appellants' clients or the jurors themselves to disregard or ignore the oath was, per se, an unlawful interference with the proceedings of the court, and, however honestly given, was at least a technical contempt. Merrimack River Savings Bank v. Clay Center, 219 U.S. 527, 536, 31 S.Ct. 295, 55 L.Ed. 320, Ann.Cas.1912A, 513; Leber v. United States, 9 Cir., 170 F. 881, 889.

■■ Further, we think that the conduct of appellants in filing affidavits, privately obtained, in support of the motions to quash the indictments, whether done intentionally or otherwise, an interference with prerogatives belonging to the court and was punishable as an obstruction to "the administration of justice" under Sec. 268 of the Judicial Code, 28 U.S.C. § 385, 28 U.S.C.A. § 385; Conley v. United States, 8 Cir., 59 F.2d 929, 935. Anciently, if a grand juror disclosed to any indicted person the evidence that appeared against him, he was thereby made accessory to the offense, if a felony; and in the days of Blackstone such juror was guilty of high misprision and liable to fine and imprisonment. · Chitty's . Blackstone, Vol. 2, p. 89. It is however now well recognized that if after the indictment and apprehension of a defendant a disclosure becomes essential to the attainment of justice and the vindication of truth, the testimony of witnesses before the grand jury may be inquired into. Our question is, who shall make the inquiry; and under what exigencies, and with what safeguards, it may be exercised.

The reasons for the oath of secrecy are stated in United States v. Amazon Chemical Corp., D.C., 55 F.2d 254, 261, "(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons

[2] United States v. Perlman, D.C., 247 F. 158; Atwell v. United States, 4 Cir., 162 F. 97, 17 L.R.A.,N.S., 1049, 15 Ann. Cas. 253; Metzler v. United States, 9 Cir., 64 F.2d 203; United States v. Silverthorne, D.C., 265 F. 853; United States v. Farrington, D.C., 5 F. 343; United States v. Cobban, C.C., 127 F. 713; In re National Window Glass Workers, D.C., 287 F. 219.

subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untramelled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt. It is obvious that the basis of all but the last of these reasons for secrecy is protection of the grand jury itself, as the direct independent representative of the public as a whole, rather than of those brought before the grand jury."

See also United States v. Goodman, 9 Cir., 108 F.2d 516, 519.

On the other hand, the dissenting opinion in McKinney v. United States, 8 Cir., 199 F. 25, 31, records the distress and abuses which may inhere in the requirements of secrecy. We quote: "It is a serious thing for any man to be indicted for an infamous crime. Whether innocent or guilty he cannot escape the ignominy of the accusation, the dangers of perjury and error at his trial, the torture of suspense and the pains of imprisonment, or the burden of bail. The secrecy of any judicial procedure is a tempting invitation to the malicious, the ambitious, and the reckless to try to use it to benefit themselves and their friends and to punish their enemies. If malicious, ambitious, or over-zealous men, either in or out of office, may with impunity persuade grand juries without any legal evidence, either by hearsay testimony, undue influence, or worse means, to indict whom they will, and there is no way in which the courts may annul such illegal accusations, the grand jury, instead of that protection of 'the citizen against unfounded accusation, whether it comes from government or be prompted by partisan passion, or private enmity' * * * which it was primarily designed to provide, may become an engine of oppression and a mockery of justice."

■ It follows that the public interest in maintaining the secrecy of the grand jurors' deliberations and the interest of the accused in exposing them may often be in direct conflict. The responsibility of evaluating these conflicting considerations in the interest of truth and justice is a delicate one. It is unthinkable that the decision should be left to the bias of an accused or his counsel, or to the inexperience of a juror. Logically, the responsibility for relaxing the rule of secrecy and of supervising any subsequent inquiry should reside in the court, of which the grand jury is a part and under the general instructions of which it conducted its "judicial inquiry." Cobbledick v. United States, 309 U.S. 323, 327, 60 S.Ct. 540, 84 L.Ed. 783; Hale v. Henkel, 201 U.S. 43, 66, 26 S.Ct. 370, 50 L.Ed. 652. It is a matter which appeals to the discretion of the court when brought to its attention. This has long been the practice and we think it is sound procedural law. Chadwick v. United States, 6 Cir., 141 F. 225, 235; McKinney v. United States, supra; Grace v. United States, 5 Cir., 4 F.2d 658; Murdick v. United States, 8 Cir., 15 F.2d 965, 968; Cox et al. v. Vaught, Judge, 10 Cir., 52 F.2d 562; United States v. American Med. Ass'n, supra; In re Grand Jury Proceedings, D.C., 4 F.Supp. 283.

No one of the cases relied upon by appellants is clear cut authority for the proposition that there may be a private investigation and inquiry of grand jurors prior to their final discharge and certainly not one of these cases authorizes the filing of affidavits, obtained by such inquiry, in support of motions to quash indictments.

■ Appellant Schmidt urges that the judge should have withdrawn from consideration of the case against him, on the ground that judicial impartiality had been blurred by personal factors. Appellant Mau does not directly make the point but we feel that the feature is inherent in both cases.

On September 15, 1939, defendants, Cooper, Hagen and LeFeber, each, filed affidavits of bias and prejudice against the judge under the provisions of Sec. 21 of the Judicial Code, 28 U.S.C. § 25, 28 U.S. C.A. § 25.

The substance of Cooper's affidavit was, —that while the grand jury was deliberating on the matters presented against him, the District Judge had a conference with the District Attorney and his assistants; that affiant was informed and believed that the judge discussed with the prosecuting officials the question of the indictment

against him and the alleged evidence to be presented to the grand jury and important legal questions relating to the possible indictment and trial of appellant; that at the conference the judge expressed an opinion personally prejudicial to affiant regarding the facts of the case and the alleged "guilt" of appellant and that appellant was informed and believed that the judge gave advice and assistance to the District Attorney and other representatives of the Department of Justice with regard to the proceedings against him. The affidavit sets forth a second alleged conference between the judge and the prosecuting officials and continues that appellant is informed and believed that in this conference also the judge expressed an opinion personally prejudicial to him. The affidavit averred that the judge had prejudged important legal questions affecting his rights and had formed and expressed an opinion personally hostile and antagonistic to him and had given assistance, aid and advice to the prosecuting officials and had assumed the role of a prosecutor, personally biased and prejudiced against him.

The affidavit of Hagen is along the same general line but its tone is milder and it does not go into so great detail.

The affidavit of LeFeber is not printed.

The good faith of these affidavits was attested by the certificates of affiants' respective counsel, Schmidt and Mau. They carried a serious reflection upon the conduct of the judge. See Canon 5 of Judicial Ethics. On October 12, 1939, before the petition to show cause was filed on October 17, the court struck these affidavits from the record upon the ground that they were legally insufficient. But the judge could not decide upon their truth or falsity. So far as we are advised there is no "due process" by which their truth or falsity could be determined. If the judge found them legally sufficient he was required to "proceed no further therein * * *." Berger v. United States, 255 U.S. 22, 41 S. Ct. 230, 234, 65 L.Ed. 481. In the Berger case at page 36 of 255 U.S., at page 234 of 41 S.Ct. 65 L.Ed. 481, it is said: "And the reason is easy to define. To commit to the judge a decision upon the truth of the facts gives chance for the evil against which the section is directed."

We think the reasoning of the Berger case is applicable here. The judge should not have been required to try the contempt cases, while he was confronted with the affidavits of bias and prejudice to which appellants had appended their certificates of good faith. This is no reflection upon the judge, nor upon any judge so confronted. Even a judge may not put aside the propensities of human nature as easily as he does his robe.

We have examined the record carefully and we think that the cases should have been tried in a different atmosphere than that which characterized it. Cooke v. United States, 267 U.S. 517, 539, 45 S.Ct. 390, 69 L.Ed. 767; Toledo Newspaper Co. v. United States, 6 Cir., 237 F. 986, 988; Cornish v. United States, 6 Cir., 299 F. 283.

■ Guilt in a criminal contempt must be established beyond a reasonable doubt. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874. Once established, the penalty of such a judgment against an attorney is long-lived.

It does not cease with the payment of a fine or with the discharge of a jail sentence, but, being inherent in the judgment, may arise to confront him throughout his professional career.

■ We do not adjudge that any unfairness permeated the trial of these cases, but to eliminate the "chance" that such existed, the judgment should be reversed and the cases remanded for further proceedings before another judge. The new trial will necessarily require the consideration and decision of the question whether the conduct of appellants constituted a technical contempt only or whether it involved any contemptuous motive or wilful and intentional disrespect of the court. Such decision is required as a prerequisite to a proper determination of the penalty to be imposed. Cooke v. United States, supra, 267 U.S. page 537, 45 S.Ct. 390, 69 L.Ed. 767.

Reversed.