**In re GRAND JURY PROCEEDINGS.**

**No. 87–2215.**

United States Court of Appeals,
Sixth Circuit.

Argued April 25, 1988.

Decided July 15, 1988.

James K. Robinson (argued), Mark R. Werder, Detroit, Mich., for defendant-appellant.

Roy C. Hayes (argued), Kathleen Nesi, Lynn A. Helland, U.S. Atty., Detroit, Mich., for plaintiff-appellee.

Before MERRITT and KENNEDY, Circuit Judges, and CONTIE, Senior Circuit Judge.

MERRITT, Circuit Judge.

The issues presented by this appeal arose when the government sought subsequent access for civil purposes to documentary materials and other evidence accumulated in the course of a now terminated grand jury investigation. In particular, we are faced with interpreting the phrase "matters occurring before the grand jury" which occurs in the text of Federal Rule of Criminal Procedure 6(e).[1] Holding that a variety of materials were not "matters oc-

---

**1.** Rule 6(e) provides in part (emphasis added):

(2) *General Rule of Secrecy.* A grand juror, ... an attorney for the government, or any person to whom disclosure is made under 3(A)(ii) of this subdivision shall not disclose *matters occurring before the grand jury.*

. . . . .

(3) *Exceptions.*

. . . . .

(C) Disclosure otherwise prohibited by this rule of *matters occurring before the grand jury* may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding;

. . . .

If the court orders disclosure of *matters occurring before the grand jury,* the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

curring before the grand jury," the District Court held that rule 6(e) did not apply to any of the materials. The Court allowed the United States Customs Service access to the materials without engaging in the ordinary rule 6(e) inquiry whether the contemplated use was "preliminar[y] to or in connection with a judicial proceeding" under *United States v. Baggott*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), or whether the Customs Service had satisfied the "particularized need" showing required by *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), and progeny. The primary issue on appeal is whether confidential business records, the production of which the grand jury compelled by subpoena, are "matters occurring before the grand jury" and therefore subject to a rule 6(e) analysis. We conclude that the District Court did not address this issue properly, and we therefore reverse and remand the case to the District Court for further proceedings under rule 6(e).

## I.

A large American company[2] was under grand jury investigation in the early 1980's for suspected criminal concealment of its alleged violation of Customs regulations that sought to prohibit "dumping" of foreign-made commodities by forbidding importation of certain products below a specified "trigger" price. The criminal investigation focused on suspected violations of 18 U.S.C. §§ 542 and 1001. The investigation terminated with a prosecutorial decision not to seek indictments.

Shortly thereafter, the Company's lawyers wrote to the prosecutors asking that they be notified if the Government would be seeking to use for civil purposes any materials provided by the Company to the grand jury either under subpoena or voluntarily in an effort to persuade the prosecutors that no indictable behavior had occurred. The Government responded that it had already obtained the materials *ex parte*. The Company then moved the District Court in which the grand jury sat to vacate the order that authorized the turnover. The Government and the Company agreed to a stipulation that, pending resolution of the Government's entitlement to them, there would be no further disclosure or use of the contested materials "unless [they were] independently obtained by the Government pursuant to separate proceedings."

In the initial *ex parte* proceeding the District Court had signed a brief order identical to that submitted by the government authorizing access to the materials by Treasury Department lawyers and employees. The application for disclosure sought "those documents subpoenaed by the grand jury" and then enumerated a variety of documentary evidence that had been obtained by four separate subpoenas issued by the grand jury in October 1984, January 1985, and April 1985.

The parties agree that the materials sought should be grouped into five conceptual categories:

1. Documents prepared by the Company for purposes other than the grand jury investigation.

2. The list of persons who were involved in the commodity transactions. The government conceded below that this listing constituted a "testimonial response" by the Company.

3. Notes prepared by agents of the grand jury that summarize and analyze all

**2.** Ordinarily, of course, we name the parties involved in proceedings in this or any federal court, because ordinarily the business of courts is public business. *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 567–69, 100 S.Ct. 2814, 2822–23, 65 L.Ed.2d 973 (1980). Because the Government decided to decline further prosecution in this case, however, revelation of the "Company's" identity in this opinion would tend to reveal an aspect of the grand jury proceeding and frustrate one of the principal purposes of grand jury secrecy, *viz.*, "to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation." *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986, n. 6, 2 L.Ed.2d 1077 (1958); *see also* Fed.R. Crim.P. 6(e)(5), (6).

the evidence, principally the materials enumerated in Category One.

4. The memorandum of interview of a witness under subpoena by the grand jury. The interview was conducted before his testimony.

5. Materials arguably protected by the attorney-client privilege. The Company waived the privilege with respect to certain documents submitted to the grand jury in order to demonstrate its lack of criminal intent, and now apparently seeks to limit its waiver to only these documents and only for their use by the grand jury. The Government acknowledged below that these materials should not "be released until the claim of privilege is resolved" even though they were not, in the Government's view, "matters occurring before the grand jury."

After a hearing in which it heard arguments from counsel for the Government and the Company, the District Court issued a second sealed opinion in which it explained that its earlier ruling had been grounded upon a finding that none of the materials sought could be "properly classified as 'matters occurring before the grand jury'" because

> the documents in question, as described by the parties, do not reveal and would not aid Customs in determining what transpired in the grand jury room. Neither does the Court find that they were being sought to achieve that purpose. Rather, the Customs Service's interest is in the contents of the documents themselves.

To support this analysis, the District Court relied principally on *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52 (2d Cir.1960), and progeny. It simply did not mention or discuss either of the two categories that the Government had conceded required special attention, Categories Two (testimonial response) and Five (attorney-client privilege).

## II.

■ Neither the Supreme Court nor this Court has addressed the issue of what constitutes "matters occurring before the grand jury" for purposes of rule 6(e). It is common ground that testimony before a grand jury is always such a "matter"; the dispute is over whether subpoenaed documents should be so considered—particularly the documents in Category One which were originally prepared for business purposes, not grand jury purposes. In *In re John Doe Grand Jury Proceedings*, 537 F.Supp. 1038 (D.R.I.1982), Chief Judge Pettine summarized well the several, inconsistent approaches that other courts have taken to the problem whether disclosure of documents subpoenaed by a grand jury is governed by rule 6(e) secrecy provisions. He grouped them as follows:

(1) A *per se* rule that subpoenaed documents are *never* "matters occurring before the grand jury" and thus not subject to the rule.

(2) A virtually *per se* rule similar to the first approach, holding that subpoenaed documents are not subject to the rule so long as they are sought for their own sake—for their "intrinsic value"—rather than to learn what transpired before the grand jury. This is the "purpose" approach attributed to *Interstate Dress Carriers* that was embraced by the District Court.

(3) An opposite *per se* rule that subpoenaed documents always are subject to the rule. This approach usually is accompanied by a correlative principle that a lesser showing of "particularized need" under *Douglas Oil* is necessary for documents than for testimony.

(4) An approach which calls for an individualized determination whether a given disclosure will, when reasonably considered in the context of the particular grand jury inquiry, tend to reveal some secret aspect of the grand jury investigation. This factual analysis will turn not on the purpose of the party seeking disclosure but rather on the effect of disclosure. This general "effect" approach has been employed in the Third, Seventh, and D.C. Circuits.

In deciding what the proper approach to this issue should be, our overriding concern must be faithfulness to the requirements of

rule 6(e). The rule's plain language does not give a clear answer. But resort to its policies and history convinces us that we should be very reluctant to permit wholesale access to grand jury evidence without the safeguard of judicial supervision.

The general policies that underlie grand jury secrecy are:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosure by persons who have information with respect to the commission of crimes; (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. Proctor & Gamble Co.,* 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). In both *United States v. Sells Engineering,* 463 U.S. at 432–33, 103 S.Ct. at 3142–43, and in *United States v. John Doe, Inc. I,* 481 U.S. 102, 107 S.Ct. 1656, 1663–64, 95 L.Ed.2d 94 (1987), the majority of the Court identified three types of dangers involved in "disclosure of grand jury information to Government attorneys for use related to civil proceedings":

1. Disclosure increases the risk of inadvertent or illegal further release of information to unauthorized persons and thus may threaten the willingness of witnesses to testify fully and candidly;

2. A threat to the integrity of the grand jury process itself if there is a tendency for the government to abuse the grand jury process; and

3. Possible subversion of the limits otherwise placed on the Government's investigative and discovery powers in the civil context.

In *Sells,* 463 U.S. at 435, 103 S.Ct. at 3144, the Supreme Court said that the "policies of Rule 6 require that any disclosure to attorneys other than prosecutors be judicially supervised rather than automatic." In *John Doe I,* 107 S.Ct. at 1663–64, the Court emphasized in the particularized-need context that "[t]he fact that a court is involved" in determining access rather than there being simply "unfettered access to grand jury materials" "lessens some of the usual difficulty in detecting grand jury abuse." When rule 6(e) was redrafted in 1977, the Senate Report noted that, although there was "no intent to preclude the use of grand jury-developed evidence for civil law enforcement purposes,"

the Rule seeks to allay the concerns of those who fear that such prosecutorial power will lead to misuse of the grand jury to enforce non-criminal Federal laws by (1) providing a clear prohibition, subject to the penalty of contempt and (2) requiring that a court order under paragraph (C) be obtained to authorize such a disclosure.

S.Rep. No. 354, 95th Cong. 1st Sess. 8, *reprinted in* 1977 U.S.Code Cong. & Admin.News 527, 531–32, *quoted in Sells,* 463 U.S. at 441, 103 S.Ct. at 3147, and in *John Doe I,* 107 S.Ct. at 1668 (Brennan, J., dissenting).

The Government argues that these overriding concerns of rule 6(e) should be "inapplicable" to our analysis because the disclosure here is simply not a "matter[ ] occurring before the grand jury" and thus is not governed by the secrecy measures of rule 6(e). This argument begs the question. How we construe the scope of the phrase "matters occurring before the grand jury" is properly guided by the dominant purpose of rule 6(e), which the Government concedes "is, of course, to preserve the secrecy of grand jury proceedings themselves." Brief for the United States at 7.

The first and second approaches described by Chief Judge Pettine above pay insufficient attention to the important privacy and confidentiality purposes embodied in rule 6(e) and to the need for judicial supervision of the release of material ob-

tained by coercion with the promise of secrecy. It is obvious that the Government's claim of a proper purpose alone cannot guarantee that grand jury secrecy is not in fact compromised. Even documents "sought for their own sake" may, when considered in the aggregate and in their relationship to one another, make possible inferences about the nature and direction of the grand jury inquiry. *See In re Doe*, 537 F.Supp. at 1045–47; *In re Special March 1981 Grand Jury (Almond Pharmacy, Inc.)*, 753 F.2d 575, 579 (7th Cir. 1985); Comment, *Civil Discovery of Documents Held by a Grand Jury*, 47 U.Chi. L.Rev. 604, 612–13 (1980).

The third approach has been criticized for erring in the opposite direction. According to this critique, a party could submit its only copy of a document to a grand jury and thereby subject any subsequent litigant who innocently requested the document to the necessity of making a "particularized need" showing in a rule 6(e) hearing in order to obtain it. *See Almond Pharmacy*, 753 F.2d at 578.

The fourth, or "effect", approach adopted in several other circuits has been described in the greatest detail by Judge Wood in *In re Special February, 1975 Grand Jury (Baggot)*, 662 F.2d 1232, 1243–44 (7th Cir.1981), *aff'd sub nom. United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983); *see In re Grand Jury Proceedings (Miller Brewing Co.)*, 687 F.2d 1079, 1089–90 (7th Cir.1982). *See also Senate of Puerto Rico v. United States Department of Justice*, 823 F.2d 574, 581–84 (D.C.Cir.1987); *In re Grand Jury Matter*, 697 F.2d 511, 512–13 (3d Cir. 1982); *In re Grand Jury Investigation (New Jersey State Comm'n of Investigation)*, 630 F.2d 996 (3d Cir.1980), *cert. denied*, 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed. 2d 805 (1981). There are weaknesses in the third and fourth approaches. The third may sometimes impose overly rigid restraints on a governmental or other litigant seeking sole copies of certain documents, and the fourth may sometimes require considerable expenditure of judicial time to carry out the often close analysis necessary to determine whether disclosure of given

documentary evidence will reveal the nature, scope, or direction of grand jury proceedings. *See, e.g., Fund for Constitutional Government v. National Archives & Records Service*, 656 F.2d 856 (D.C.Cir. 1981); *Murphy v. FBI*, 490 F.Supp. 1138 (D.D.C.1980).

We share, however, these courts' unwillingness to adopt a construction of rule 6(e) in "wholesale disregard" of the traditional secrecy concerns that underlie the rule. *See U.S. Industries v. United States District Court*, 345 F.2d 18, 20–21 (9th Cir.), *cert. denied*, 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965). We emphasize that these secrecy concerns spring not only from a desire to protect the institutional integrity of the grand jury but also from a recognition of the extraordinary coercive powers of the grand jury to compel the production of confidential information. The targets of such investigations, who have produced their confidential records under compulsion, also have an important interest in the public disclosure of information so obtained.

Although many courts faced with interpreting the meaning of "matters occurring before the grand jury" have concentrated solely on whether disclosure of a given matter was intended to reveal or would reveal what transpired in the grand jury inquiry, the purposes of grand jury secrecy embodied in rule 6(e) extend further. As this Court discussed long ago in *Schmidt v. United States*, 115 F.2d 394 (6th Cir.1940), the first four purposes of grand jury secrecy (later adopted in *United States v. Proctor & Gamble Co.*, 356 U.S. at 681 n. 6, 78 S.Ct. at 986 n. 6, quoted *supra*, p. 864) protect the institution of "the grand jury itself, as the direct independent representative of the public as a whole," but the fifth and final purpose seeks to protect the interests of "those brought before the grand jury." *Schmidt*, 115 F.2d at 397 (quoting *United States v. Amazon Indus. Chemical Corp.*, 55 F.2d 254, 261 (D.Md.1931)). This final purpose gains all the more force when the party brought before the grand jury, as here, "is exonerated." *United States v. Proctor & Gamble Co.*, 356 U.S. at 681 n.

6, 78 S.Ct. at 986, n. 6. Preventing misuse of the grand jury process for civil purposes therefore protects the interests both of the criminal process and of the civil litigant. *See Sells*, 463 U.S. at 432–33, 103 S.Ct. at 3142–43; *John Doe I*, 107 S.Ct. at 1663–64.

Unlike the mechanisms of civil discovery, the grand jury's coercive power to extract information has few limits. As the Supreme Court noted in *Sells*, 463 U.S. at 423, 103 S.Ct. at 3137:

> Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considered appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974), quoting *Blair v. United States*, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919).

Through these extraordinarily coercive processes grand juries often pick up confidential business information, rumor, gossip, and information of an intimate nature. It makes no sense to construe rule 6(e) in a way that would wholly exempt such confidential information extracted by compulsion from the safeguard against grand jury abuse that judicial supervision normally provides. Arguments to the contrary take out of context what was actually a narrow holding in *Interstate Dress Carriers* that "documents as well as oral testimony *of course* come within [the rule's] proscription against disclosure" and that

when testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the *same information was revealed* to a grand jury or that the *same documents* had been, or were presently being, examined by a grand jury.

280 F.2d at 54 (emphasis added).

It is a long stretch indeed to extend this limited exception to a situation in which, for example, a government agency pursuing a civil action asks a court for all documents obtained pursuant to subpoenas issued by a grand jury. *See, e.g., United States v. Saks & Co.*, 426 F.Supp. 812 (S.D.N.Y.1976). Although some courts have made this stretch to characterize such documents as not "matters occurring before the grand jury," those cases are perhaps more realistically viewed as *sub rosa* holdings that the government agency would be able to satisfy a lowered "particularized need" standard. *See id.* at 814–15.

We recognize that there may be situations in which information is sought coincidentally "for its own sake" independent of a grand jury investigation and thus do not implicate the secrecy concerns of rule 6(e). In *Interstate Dress Carriers*, for example, the documents sought under a 6(e) request were the sole copies of certain records sought by the Interstate Commerce Commission; the company previously had turned them over to the grand jury. 280 F.2d at 53. In *Securities & Exchange Comm'n v. Dresser Indus.*, 628 F.2d 1368 (D.C.Cir.) (en banc), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980), the agency sought documents directly from Dresser, not from the grand jury, and the means employed was a lawful civil subpoena rather than a 6(e) request. *Id.* at 1383.

The general rule, however, must be that confidential documentary information not otherwise public obtained by the grand jury by coercive means is presumed to be "matters occurring before the grand jury" just as much as testimony before the grand jury. The moving party may seek to rebut

that presumption by showing that the information is public or was not obtained through coercive means or that disclosure would be otherwise available by civil discovery and would not reveal the nature, scope, or direction of the grand jury inquiry, but it must bear the burden of making that showing, just as it bears the burden of showing that there is a "particularized need." *See Sells,* 463 U.S. at 443–46, 103 S.Ct. at 3148–49; *Douglas Oil,* 441 U.S. at 222–23, 99 S.Ct. at 1674–75. Other courts have made analogous suggestions for a presumptive approach to this question. *See In re Sealed Case,* 801 F.2d 1379, 1381–82 (D.C.Cir.1986); *In re Grand Jury Matter, Garden Court Nursing Home,* 697 F.2d 511, 512 (3d Cir.1982) (dicta); *In re Doe,* 537 F.Supp. at 1046–47.

We believe that this approach to rule 6(e) will provide the proper amount of judicial supervision to effectuate the important underlying secrecy concerns. It combines the better features of Judge Pettine's third and fourth approaches, providing more certainty while avoiding too-technical rigidity. Governmental agencies still may obtain access to some grand jury materials, but only after making the requisite showings to the District Court. In this way the judiciary will remain in its traditional position as Cerberus at the gate of grand jury information. *Cf. U.S. Industries,* 345 F.2d at 20–21.

### III.

■■■ In the absence of factual findings, serious consideration of the specific circumstances, or a factual record developed by the District Court, we decline to decide whether the documents at issue are "matters occurring before the grand jury." On remand, the District Court should make findings of fact and conclusions of law on this question with respect to each of the five categories set out above. In Category One, the Court should inquire, for example, whether the coercive powers of the grand jury were used to obtain confidential business information, or other information of a confidential nature that would have not otherwise been disclosed, or whether the

progression of information sought via the sequential subpoenas might tend to reveal the nature or direction of the grand jury proceedings. In Categories Three and Four, the Court should consider the precise circumstances of the summaries and the interview. The Court also should resolve the issues of "testimonial response" and privilege raised by Categories Two and Five. So long as the grand jury has obtained the information sought to be disclosed by coercion, and so long as the information is not in the public domain, the government should bear the burden of showing that the information does not pertain to a matter occurring before the grand jury.

Finally, assuming upon reconsideration that the District Court decides that the items are "matters occurring before the grand jury," it should undertake the "preliminar[y] to … a judicial proceeding" and "particularized need" analyses. The order of the District Court is vacated and the case remanded for further proceedings consistent with this opinion.