UNITED STATES of America; Ronald Sheresh, Revenue Agent, Internal Revenue Service, Plaintiffs/Petitioners/Appellees,

v.

DYNAVAC, INC.; Donald J. Helmer; and Morgan T. Wright, Defendants/Respondents/Appellants.

UNITED STATES of America; Ronald Sheresh, Revenue Agent, Internal Revenue Service, Plaintiffs/Petitioners/Appellees,

v.

Curtis J. CORN, Defendant/Respondent/Appellant.

Nos. 91–56376, 91–56539.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 4, 1993.

Decided Oct. 8, 1993.

---

1408

James A. Bruton, Acting Asst. Atty. Gen.; Gary R. Allen, Charles E. Brookhart, Joel A. Rabinovitz, Attys., Tax Div., Dept. of Justice, Washington, DC, for plaintiffs/petitioners/appellees U.S. of America and Ronald Sheresh.

Donald Helmer, Morgan T. Wright, Dynavac, Inc., in pro per.

Robert K. Smith, La Jolla, CA, for defendant/respondent/appellant Curtis J. Corn.

Before: KOZINSKI, SUHRHEINRICH[*] and T.G. NELSON, Circuit Judges.

SUHRHEINRICH, Circuit Judge:

In this consolidated appeal, Dynavac, Inc., Donald J. Helmer, and Morgan T. Wright (91–56376) and Curtis J. Corn (91–56539) (collectively "respondents") appeal the district court's orders enforcing summonses of the Internal Revenue Service ("IRS" or "government"), pursuant to 26 U.S.C. §§ 7601 and 7602, to examine their business records which are being held by the United States Attorney. The principal issue we consider is whether these business records, previously submitted to the grand jury as part of a criminal investigation, are "matters occurring before the grand jury" under Federal Rule of Criminal Procedure 6(e) and therefore protected from subsequent disclosure in a civil tax investigation. The district court permitted disclosure without a showing that the request was "preliminary to or in connection with a judicial proceeding" under *United States v. Baggott,* 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), or whether the IRS had shown "particularized need" as required by *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983).

---

[*] The Honorable Richard F. Suhrheinrich, Circuit Judge for the United States Court of Appeals for the Sixth Circuit, sitting by designation.

## I.

The Internal Revenue Service is presently investigating the federal income tax liability of Dynavac, Inc. (formerly Allied Tank Cleaning, Inc.), for the taxable years ending September 30, 1979, September 30, 1980, September 30, 1981, and September 30, 1982. As part of this investigation, IRS Agent Ronald Sheresh issued administrative summonses to Corn (Case No. 91–56376), and to Helmer and Wright, the current owners of Dynavac, and to Dynavac, seeking that company's business books and records for the years in question. Respondents resisted, contending that the requested materials were "matters occurring before the grand jury" not subject to disclosure because they had been previously disclosed to the grand jury during a 1983 criminal investigation of Corn.

In the criminal investigation, the books and records of three corporations in which Corn was the sole or majority shareholder, Transambient Corporation, Commercial Cleaning Corp. and Allied Tank Cleaning, Inc. (now known as Dynavac, Inc.), were turned over to the grand jury. Corn was later indicted on twenty-three counts of conspiracy, income tax evasion, and the filing of fraudulent claims with the United States Navy, and eventually pled guilty to three of the counts. At the plea hearing Corn also purportedly agreed to waive his rights (but not those of any other individual or entity) under Rule 6(e) and agreed to let the IRS have any and all information by the grand jury in the criminal case for the purpose of its making a "tax assessment" against Corn. Corn's criminal attorney later transmitted to the United States Attorney the special agent's report ("SAR") prepared as part of the criminal tax investigation of Corn, which included a number of references to the substance and results of the grand jury's inquiry.

After Corn pled guilty, Revenue Agent Reginald Curtis ("Curtis"), took over the federal civil tax audits of Corn and the three corporations. Curtis reviewed Corn's criminal file which contained the indictment, the transcript of the guilty plea, and the sentencing report; requested documents; and made a preliminary determination of the taxpayers' (Corn and his companies) tax deficiencies.

Curtis and his group manager Jim Thibault received word from the United States Attorney's office in San Diego, which had been involved in the grand jury investigation, that the SAR could be used in the civil tax audit so long as it was received from the taxpayer. Sometime after receiving the SAR, Curtis issued a summons for the books and records of Dynavac. The district court refused to enforce the summons, however, because of Curtis's use of the report, and the government withdrew its enforcement petition. Thibault thereafter directed Curtis to purge all references of the SAR from Curtis's papers, which Curtis did. Thibault physically took the Dynavac files away from Curtis and sent them to the chief of the examinations branch for reassignment to a group that was outside of Thibault's branch. Curtis eventually finished the audit of Corn and the other two corporations, excluding Dynavac, Inc.

The Dynavac civil tax audit was reassigned to Sheresh, who issued the administrative summonses which are the subject of the current enforcement proceeding. Sheresh is an agent in the general program of the IRS examination division. The file which he received contained only Dynavac's tax returns for the years 1979 through 1982, Corn's indictment, the transcript of Corn's plea, and portions of an Internal Revenue manual. No one contends that Sheresh has had any improper contact with Curtis or Thibault concerning the SAR.

In June of 1989, the IRS district counsel in charge of civil audits of Corn and one of his corporations, Transambient Corporation, June Bass, obtained a Rule 6(e) order for the grand jury transcripts and the SAR. Bass also obtained a change of custody order regarding the books and records of all three companies, including Dynavac, which were being held by the custodian of the grand jury. The records were transferred to the local federal building. Bass testified that she made copies of the records she needed but did not take physical possession of the records.

The government filed petitions in the district court to enforce the internal revenue summonses issued by Sheresh. After conducting an evidentiary hearing, the district court concluded that the materials, Dynavac's books and records, were not "grand jury material," because they existed prior to the issuance of the grand jury subpoena. The court also found that there was a violation of Rule 6(e) when Curtis obtained the SAR, but that it was subsequently cured after the file was purged and the case transferred to Sheresh. The district court therefore declined respondents' request to quash the summonses. This appeal followed.

## II.

### A.

With certain exceptions, Rule 6(e) imposes a general rule against disclosure of "matters occurring before the grand jury" on government attorneys. Fed.R.Crim.P. 6(e)(2).[1] This long-established policy of nondisclosure seeks to: (1) prevent the escape of prospective indictees, (2) insure the grand jury of unfettered freedom in its deliberations, (3) impede the subornation of perjury and tampering of witnesses by targets of the investigation, (4) encourage forthrightness in witnesses without fear of retaliation, and (5) act as a shield for those who are exonerated by the grand jury. *Proctor & Gamble Co.*, 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986 n. 6,

2 L.Ed.2d 1077; *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219, 99 S.Ct. 1667, 1673, 60 L.Ed.2d 156 (1979), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 672, 70 L.Ed.2d 639 (1981); *United States Indus., Inc. v. United States Dist. Ct.*, 345 F.2d 18, 22 (9th Cir.), *cert. denied*, 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965). When government attorneys seek grand jury information for use in related civil proceedings, the concerns are that disclosure will increase the risk of inadvertent or illegal further release of the information to unauthorized persons, the integrity of the grand jury process itself will be compromised, and possible subversion of the limits otherwise placed on the government's investigative and discovery powers in the civil context. *United States v. John Doe, Inc. I*, 481 U.S. 102, 111, 107 S.Ct. 1656, 1662, 95 L.Ed.2d 94 (1987); *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 432–33, 103 S.Ct. 3133, 1342–43, 77 L.Ed.2d 743 (1983); *In re Grand Jury Proceedings*, 851 F.2d 860, 864 (6th Cir.1988). However, Rule 6(e) "is intended only to protect against disclosure of what is said or takes place in the grand jury room ... it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury." *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir.1960). Thus, if a document is sought for its own sake rather than to learn what took place

1. Rule 6(e) provides in relevant part:
   (e) **Recording and Disclosure of Proceedings.**

   (2) **General Rule of Secrecy.** A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

   (3) **Exceptions.**

   (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

   (i) when so directed by a court preliminarily to or in connection with a judicial proceeding;
   (ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury;
   (iii) when the disclosure is made by an attorney for the government to another federal grand jury; or
   (iv) when permitted by a court at the request of an attorney for the government, upon a showing that such matters may disclose a violation of state criminal law, to an appropriate official of a state or subdivision of a state for the purpose of enforcing such law. If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its release. *Id.* *See also DiLeo v. Commissioner,* 959 F.2d 16 (2d Cir.) (reaffirming *Interstate Dress's* status as the law of the circuit), *cert. denied,* —— U.S. ——, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992).

■ When the grand jury investigation is already terminated and an indictment has been issued, only "institutional" concerns are implicated by the documentary disclosure. *See generally* Nervi, *FRCrP 6(e) and the Disclosure of Documents Reviewed by a Grand Jury,* 57 U.Chi.L.Rev. 221, 230 (1990). The fear of compromising future grand jury proceedings is further reduced when the request is for business records created for purposes independent of grand jury investigations, which have legitimate uses unrelated to the substance of the grand jury proceedings. *In re Grand Jury Investigation,* 630 F.2d 996, 1000 (3d Cir.1980), *cert. denied,* 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981); *SEC v. Dresser Industries, Inc.,* 628 F.2d 1368, 1382 (D.C.Cir.) (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). In sum, we think that the disclosure of business records independently generated and sought for legitimate purposes, would not "seriously compromise the secrecy of the grand jury's deliberations." *DiLeo,* 959 F.2d at 19 (quoting *In re Special March 1981 Grand Jury (Almond Pharmacy),* 753 F.2d 575, 578 (7th Cir. 1985)).[2]

Various different tests have been utilized by other circuits. *See generally,* Nervi, *FRCrP and Disclosure of Documents; In re Grand Jury Proceedings,* 851 F.2d at 860

(recognizing four approaches, citing *In re John Doe Grand Jury Proceedings,* 537 F.Supp. 1038 (D.R.I.1982), and creating a fifth approach). *In re John Doe Grand Jury Proceedings,* 537 F.Supp. 1038 (D.R.I.1982) (classifying four distinct approaches). The per se approach, which never classifies documents as "matters occurring before the grand jury," *see, e.g., United States v. Weinstein,* 511 F.2d 622, 627 n. 5 (2d Cir.) ("[i]n any event it is questionable whether Rule 6(e) applies to documents"), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975); *In re Grand Jury Investigation of Ven–Fuel,* 441 F.Supp. 1299, 1303 (M.D.Fla. 1977) ("it is doubtful whether mere documentary information was ever included within the scope of Rule 6(e)"), and the opposite per se approach, which treats documents as always protected from disclosure under Rule 6(e), *see, e.g., Texas v. United States Steel,* 546 F.2d 626 (5th Cir.), *cert. denied,* 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); *In re Grand Jury Proceedings (Kluger),* 827 F.2d 868 (2d Cir.1987); *see also In re Grand Jury Matter (Garden Court),* 697 F.2d 511, 512 (3rd Cir.1982) (dicta) ("[w]ere we writing on a clean slate, we might well hold that disclosure of any material generated in connection with a grand jury proceeding is governed by Rule 6(e)(2)"), offer bright line rules, but suffer by their over- and under-inclusiveness. Nervi, *FRCrP 6(e) and the Disclosure of Documents,* at 237–39. The per se rule has been criticized as being inattentive to " 'the important privacy and confidentiality purposes embodied in rule 6(e) and to the need for judicial supervision of the release of material obtained by coercion with the promise of secrecy.' " *Id.* at 238 & n. 70 (quoting *In*

---

**2.** We are not unaware of criticisms of this approach. *See, e.g.,* Nervi, *FRCrP and Disclosure of Documents,* 57 U.Chi.L.Rev. at 235–36 (purpose test "focuses on an issue—the party's motive in seeking disclosure—ultimately unrelated to the question of whether grand jury secrecy is violated through release of the document"); *In re Grand Jury Proceedings,* 851 F.2d at 865 ("Even documents 'sought for their own sake' may, when considered in the aggregate and in their relationship to one another, make possible inferences about the nature and direction of the grand jury inquiry."); *In re Special February, 1975 Grand Jury,* 662 F.2d 1232, 1243–44 (7th Cir. 1981) ("If that is all there is to the test, grand

jury secrecy should be seriously eroded by being sacrificed to the alleged need for the documents by someone else and the power of the grand jury could be misused."); *In re John Doe Grand Jury Proceedings,* 537 F.Supp. 1038, 1046 (D.R.I. 1982) (agreeing with *In re Special February* ). We think these concerns a bit exaggerated in the case of business records created for purposes other than furthering a grand jury investigation. However, we allow for the possibility in a rare and unusual case of making a showing that learning *which* documents were subpoenaed by the grand jury may disclose the grand jury's deliberative process.

*re Grand Jury Proceedings,* 851 F.2d at 864–65). *See also In re Doe,* 537 F.Supp. at 1044 ("an examination of all documents subpoenaed and reviewed by the grand jury can reveal a great deal about the nature, scope, and purpose of a secret grand jury investigation ... [a]nd it is clear that such things as scope and direction of the grand jury investigation constitute 'matters occurring before the grand jury' and are therefore protected from disclosure by the provisions of Rule 6(e)"). The opposite per se approach ("per se subject to Rule 6(e)"), may unduly hinder discovery, because every specific document request that coincided with a grand jury inquiry must be denied unless the civil litigant makes a showing of particularized need under Rule 6(e)(3)(C)(i). Nervi, *FRCrP and the Disclosure of Documents,* at 238; *In re Grand Jury Proceedings,* 851 F.2d at 865; *Almond Pharmacy,* 753 F.2d at 578; *In re Doe,* 537 F.Supp. at 1045. Furthermore, a savvy party under grand jury investigation could effectively insulate documents from anticipated civil discovery simply by turning over incriminating documents to the grand jury. Nervi, *FRCrP and the Disclosure of Documents,* at 238 & n. 68; *Almond Pharmacy,* 753 F.2d at 578.

The "effect" test determines whether disclosure of a particular requested item will reveal some secret aspect of the inner workings of the grand jury. This approach has been adopted by the Third, *see, e.g., In re Grand Jury Matter (Catania),* 682 F.2d 61, 63 (3d Cir.1982) ("Rule 6(e) applies ... to anything which may reveal what occurred before the grand jury"); Fourth, *In re Grand Jury Subpoena (United States v. Under Seal),* 920 F.2d 235, 241 (4th Cir.1990) ("The substantive content of 'matters occurring before the grand jury' can be anything that may reveal what has transpired before the grand jury."); Seventh, *see, e.g., Almond Pharmacy,* 753 F.2d at 578 ("[i]f a document is sought for its own sake rather than to learn what took place before the grand jury, and if its release will not seriously compromise the secrecy of the grand jury's deliberations, Rule 6(e) does not forbid its release") (and cases cited therein); Eighth, *see, e.g., In re Grand Jury Proceedings Relative to Perl,* 838 F.2d 304, 306 (8th Cir.1988) ("[u]nless a

document reveals something about the intricate workings of the grand jury itself, the documents are not intrinsically secret just because they were examined by a grand jury"); Tenth, *see, e.g., Anaya v. United States,* 815 F.2d 1373, 1379 (10th Cir.1987) ("the test of whether disclosure of information will violate Rule 6(e) depends upon 'whether revelation in the particular context would in fact reveal what was before the grand jury'") and D.C., *see, e.g., Senate of Puerto R co v. United States Dept. of Justice,* 823 F.2d 574, 582 (D.C.Cir.1987) ("there is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers ... the touchstone is whether disclosure would 'tend to reveal some secret aspect of the grand jury's investigation'"), Circuits. The strength of the effect test is its mandate that the court make a factual inquiry on a document-by-document basis, thereby offering greater assurance of grand jury secrecy. Nervi, *FRCrP and Disclosure of Documents,* at 233–34. In its strength lies its weakness however, because, as pointed out by Nervi, its application requires considerable judicial time and resources, and the ad hoc nature of the test limits the value of precedent for both litigants and courts. *Id.* at 234–35.

Finally, there is the Sixth Circuit's rebuttable presumption approach, which presumes that documents are "matters occurring before the grand jury," but permits the moving party to rebut that presumption by showing that "the information is public or was not obtained through coercive means or that disclosure would be otherwise available by civil discovery and would not reveal the nature, scope, or direction of the grand jury inquiry." *In re Grand Jury Proceedings,* 851 F.2d at 867. Although the rebuttable presumption approach offers a compromise between the per se rules and the case-by-case approach, it has been criticized because the rebuttal factors proposed "fail to distinguish between critical and unimportant disclosures." Nervi, *FRCrP and Disclosure of Documents,* at 242–43. The first showing, that the information sought is public, overlooks the fact that most of the items commonly considered can be obtained even without resort to discovery.

*Id.* The second factor, that the information was not obtained by coercion, creates a distinction between documents that are subpoenaed and those that are voluntarily submitted, and in doing so,. discourages voluntary production of documents and doesn't necessarily prevent civil litigants from misusing the grand jury's broad investigative powers to advance their cause. *Id.* Finally, the third rebuttal factor, which requires the moving party to demonstrate that disclosure would otherwise be available through civil discovery and would not reveal the direction of the grand jury's inquiry, defeats the purpose of a rebuttable presumption. approach by introducing what is essentially an "effect" analysis. This in turn undermines the advantages of a rebuttable presumption. *Id.*

■ Here, the business records of Dynavac predated the grand jury investigation. Although the SAR was a "matter occurring before the grand jury" such that its disclosure to Curtis was a violation of Rule 6(e), the district court found as a matter of fact, that any taint was cured by the purging of Curtis's file and the transferring the case to Sheresh. Further, the IRS has a legitimate interest in the documents as part of its authority to assess civil tax liabilities, *see,* 26 U.S.C. §§ 7601–7602 (West 1989); and the records were subpoenaed directly from respondents, without mention of the grand jury. *See Dresser,* 628 F.2d at 1382–83. We are therefore satisfied that the integrity of the grand jury's deliberative process would not be compromised by their disclosure. *See, e.g., Almond Pharmacy,* 753 F.2d at 575; *Interstate Dress,* 280 F.2d at 54.

### B.

■ Having determined that the subpoenas could not be resisted on Rule 6(e) grounds, we must still consider whether the summonses were proper. The IRS has the initial burden of proving that the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to the purpose; (3) seeks information not already within the. IRS's possession; and (4) satisfies all of the administrative steps required by the Internal Revenue Code. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). The government's burden is a slight one, and may be satisfied by a declaration from the investigating agent that the *Powell* requirements have been met. *United States v. Abrahams,* 905 F.2d 1276, 1280 (9th Cir.1990); *Liberty Financial Servs. v. United States,* 778 F.2d 1390, 1392 (9th Cir.1985). Once the prima facie case is made, a "heavy" burden falls upon the taxpayer to show an abuse of process, *Abrahams,* 905 F.2d at 1280; *Liberty Financial,* 778 F.2d at 1392; or the lack of institutional good faith. *Anaya,* 815 F.2d at 1377. This court reviews a district court's order enforcing an IRS summons for clear error. *Abrahams,* 905 F.2d at 1280.

■ Agent Sheresh stated that the purpose of the investigation was to examine the federal tax liabilities of Dynavac, that the books and records were necessary to properly investigate Dynavac's tax liability, that the materials were not in the IRS's possession, and that he was authorized to issue the summonses and had adhered to all the requisite administrative steps. Thus, the onus of proving impropriety became respondents'.

Respondents contest the first and third elements of the *Powell* test. We have already dealt with respondents' claim that enforcement of the summonses would be improper as violative of Rule 6(e). Respondents also assert that the summonses were superfluous because the information was already in the IRS's possession. This argument is incorrect. Although the IRS district counsel involved in the first set of summonses obtained a change of custody order for the documents in question, she was not authorized to turn the materials over to Sheresh; the materials remained in the custody of the United States Attorney as custodian of the grand jury. In any event, as pointed out by the government, were this contention true, enforcement of the summonses would be unnecessary.

Respondents claim that the IRS lacked institutional good faith necessary for the enforcement of a summons. However, respondents have presented no evidence that the summonses in the present case were issued for any purpose other than to determine

Dynavac's civil tax liability. In light of the district court's factual findings that any taint resulting from the use of the SAR was cured when Curtis's files were purged and the case was reassigned, the unlawful disclosure of the SAR in the previous case " 'presents no evidence of bad faith or lack of legitimate purpose in *this* case.' " *United States v. Author Servs., Inc.,* 804 F.2d 1520, 1525 (9th Cir.1986) (quoting *United States v. Texas Heart Institute,* 755 F.2d 469, 480 (5th Cir. 1985) (emphasis supplied by *Texas Heart*), *modified,* 811 F.2d 1264 (1987)).

### C.

■ Respondents also argue that the summonses were not properly served because they were issued to the wrong parties. Specifically, they argue that the summonses should be quashed for failure to serve the United States Attorney, who has actual custody of the documents. This argument too is without merit. Although in the possession of a third party, the documents belong to respondents. "Documents produced pursuant to a grand jury subpoena remain the property of the person producing them." *Interstate Dress,* 280 F.2d at 54; *accord DiLeo,* 959 F.2d at 20. Furthermore, when the summonses were issued, the grand jury had completed its investigation and the only reason why the records were being held by the United States Attorney is because respondents had not yet retrieved them, which is hardly a sufficient reason to deprive the government of the documents. *Cf. Almond Pharmacy,* 753 F.2d at 578 (rejecting appellants' argument that they could not turn over business records because they had turned them over to the grand jury and did not have copies, since it would effectively put the records into "perpetual cold storage").

### D.

■ Although we reach it last, the main thrust of Dynavac's argument in this appeal is that because of the earlier violation of Rule 6(e), the instant summonses should be quashed. Given the district court's factual finding that any taint was cured, and the absence of proof of an institutional violation by the IRS, we see no reason to impose any

additional sanction, much less quash the summonses. *See generally, Bank of Nova Scotia v. United States,* 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) (refusing to dismiss an indictment for a violation of Rule 6(e) because it did not prejudice defendants). We hold that the district court did not abuse its discretion.

For all the foregoing reasons, the judgment of the district court is **AFFIRMED.**