**Henry F.K. KERSTING, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**PACIFIC PARADISE, INC.,
et al., Plaintiffs,**

**v.**

**UNITED STATES of America,
et al., Defendants.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Henry F.K. KERSTING, Defendant.**

**Civ. Nos. 90–00304 HMF, 91–00747
HMF and 92–00593 HMF.**

United States District Court,
D. Hawaii.

July 8, 1994.

670

L.T. Bradt, Houston, TX, and Matthew K. Chung, Honolulu, HI, for Kersting and the 33 corporations.

Michael Chun and Omer G. Poirier, Asst. U.S. Attys., Honolulu, HI, for U.S.

### ORDER DENYING MOTION FOR RECONSIDERATION AND MOTION TO STRIKE

FONG, District Judge.

### INTRODUCTION

On June 15, 1994, the court heard arguments on several motions brought by plaintiffs Henry Kersting and thirty-three corporations ("plaintiffs"). On May 19, 1994, plaintiffs filed a motion for reconsideration of the court's previous order, delivered from the bench on May 17, 1994, denying plaintiffs' "motion to disclose extent of invasion of attorney-client relationship and to prohibit use of evidence." The court hereby delivers its rulings on plaintiffs' motion for reconsideration of the following court orders: (1) the court's order denying plaintiffs' motion to disclose the extent of invasion of attorney-client privilege by the alleged government mole, Luis DeCastro, and to prohibit the government's use of evidence obtained thereby; (2) the court's order denying plaintiffs' motion to exclude evidence obtained with a 1981 search warrant (a) because of the alleged illegal use of the search warrant for civil purposes and (b) because of the failure of the government to obtain a Rule 6(e) order for disclosure of grand jury materials to civil investigators. In addition, the court hereby issues its ruling on (3) plaintiffs' motion to reconsider the court's denial of their motion to strike affidavits filed in response to plaintiffs' claims of attorney-client privilege violation; and (4) plaintiffs' motion for an order to show cause against the government and to compel the appearance of Luis DeCastro as a witness in this case. For the reasons set forth below, the court DENIES all of plaintiffs' motions.

### STANDARD OF REVIEW

There are three possible grounds for reconsideration: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available; and (3) the need to correct a clear error of law or prevent manifest injustice. *All Hawaii Tours v. Polynesian Cultural Center Corp.*, 116 F.R.D. 645, 649 (D.Haw.1987) (citations omitted), *rev'd on other grounds*, 855 F.2d 860 (9th Cir.1988). Local Rule 220–10 provides that

> Motions for reconsideration of interlocutory orders may be brought only upon the following grounds:
>
> (a) Discovery of new material facts not previously available;
>
> (b) Intervening change in law;
>
> (c) Manifest error of law or fact.
>
> Motions asserted under Subsection (c) of this rule must be filed within ten (10) days of the court's written order.

■ The court may reconsider its order based on new evidence not previously available. *See Leong v. Hilton Hotels Corp.*, 689 F.Supp. 1572, 1573 (D.Haw.1988) (citation omitted). Evidence is "newly discovered" and supportive of reconsideration only if the movant shows "not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." *Great Hawaiian Financial Corp. v. Aiu*, 116 F.R.D. 612, 616 (D.Haw.1987) (citations omitted), *rev'd on other grounds*, 863 F.2d 617 (9th Cir.1988).

### DISCUSSION

I. *PLAINTIFFS' MOTION TO DISCLOSE EXTENT OF INVASION OF ATTORNEY–CLIENT PRIVILEGE ISSUE.*

■ The court previously denied plaintiffs' "motion to disclose the extent of invasion of attorney-client relationship and to prohibit the government's use of evidence obtained directly and indirectly." Plaintiffs allege that during the tax court trial of *Dixon v. Commissioner* (now *Dufresne v. Commissioner*), they shared confidences with Joe Izen, Jr. and Luis DeCastro, attorneys for petitioners in *Dixon,* in order to assist in the

test cases. Plaintiffs allege further that they subsequently learned that DeCastro was an IRS "mole" who was paid to illegally infiltrate plaintiffs' "camp" and violate their attorney-client privilege.

■ Despite plaintiffs' assertion that they only recently learned of the "mole issue" involving Luis DeCastro and the Thompsons, the government has provided the following exhibits demonstrating that Kersting has, in fact, long known of Thompson's settlement agreement: (1) a Kersting letter of July 1992 refers to a "secret deal" between Jack Thompson and McWade (the district counsel) and details the betrayal of the Kersting investors by Thompson; and (2) a Kersting letter of September 1992 describing the Thompson "double-cross" and the subsequent government motion to vacate the decision in the Thompson test case in light of the contingent settlement agreement between Thompson and the IRS.

In light of these letters, it is clear that plaintiffs have known for at least two years of the issue which they have chosen to raise only on the eve of trial. It is thus within the court's discretion to deny plaintiffs' request for discovery on this issue as untimely. In *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609–10 (9th Cir.1992), the Ninth Circuit held that a Rule 16 pretrial schedule (establishing a discovery cut-off date) should not be modified unless the party seeking modification can show sufficient diligence to meet the "good cause" standard. Plaintiffs have not demonstrated any diligence with regard to raising this matter.

Nonetheless, the court is concerned by the effective payment of attorneys' fees for Luis DeCastro by the IRS. In its decision in *Dixon* (now *Dufresne* ) issued Tuesday, June 14, 1994, the Ninth Circuit vacated the tax court decision on the basis of this issue. *Dufresne v. Commissioner*, 26 F.3d 105 (9th Cir.1994). The Ninth Circuit held that the government's secret settlement agreement with Thompson potentially represented a gross structural defect which would warrant voiding the judgment as fundamentally unfair. *Id.* Accordingly, the appellate court remanded to the tax court for a full evidentiary hearing to determine whether vacating the judgment was warranted or, alternatively, whether, despite the government's misconduct, the tax court's judgment could be upheld as harmless error. *Id.* The court reasoned that in moving to vacate *Thompson, Cravens,* and *Rina,*

[t]he Commissioner presented a telling case of corruption of the process of the tax court and the rights of both the government and the taxpayers.... In effect, the government agreed to pay Thompson's legal fees.

*Id.*

■ This court is not bound by the findings of the Ninth Circuit or the tax court in *Dixon/Dufresne.* These are completely different pieces of litigation; this case concerns the organizer of the tax shelters and that case concerns the participants in the same tax shelters. The doctrine of "law of the case" plainly has no application. Nor is the court collaterally estopped by these findings. In order for collateral estoppel to apply, four requirements must be met: (1) identity of parties; (2) identity of issues; (3) a final judgment; and (4) a full and fair opportunity to litigate the claim. *See Caldeira v. County of Kauai,* 866 F.2d 1175 (9th Cir.), *cert. denied,* 493 U.S. 817, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989). There is neither a final judgment nor an identity of parties in the instant case.

Nonetheless, the court is concerned by the findings of the Ninth Circuit in *Dixon/Dufresne.* Even before this decision, the court had required the government to make certain disclosures and had reopened discovery to permit the parties to depose DeCastro.

There can be little doubt of government misconduct in *Dixon/Dufresne.* What remains unanswered is (1) whether the government's misconduct extended to the use of Luis DeCastro as a mole (sharing trial strategy and other secrets of plaintiffs in *Dixon/Dufresne* with the government), and (2) if so, whether the governments misconduct in *Dixon/Dufresne* taints these proceedings.

If the government's misconduct was limited to making the secret settlement agreement and, as part of that agreement, paying DeCastro's fees, without more, then there is

no basis for plaintiffs to assert that these proceedings are tainted. If, on the other hand, DeCastro was a mole, then there is the possibility that the government wrongfully gained access to information which it otherwise would not have gotten and which it should, consequently, be barred from using in this case.

Even if DeCastro were a mole, the court will not necessarily infer a taint. If DeCastro were a mole, then he plainly violated the attorney-client privilege of Joe Izen's clients. Plaintiffs in the instant case are, however, not clients of Izen and would have to make a further showing with regard to the breach of their privilege by DeCastro. *See United States v. Layton,* 855 F.2d 1388, 1406 (9th Cir.1988) ("[t]he burden of establishing the existence of the attorney client privilege, and of presenting the underlying facts demonstrating the existence of the privilege, rests on the claimant of the privilege.").

■ Kersting has failed to establish that his attorney-client privilege was implicated. *See United States v. Plache,* 913 F.2d 1375, 1379 n. 1 (9th Cir.1990) (discussing requirements for attorney-client privilege to attach). Contrary to plaintiffs' assertions, the "common defense" privilege is not applicable in the case at bar. To establish a common defense privilege, a party must show that "(1) the communications were made in the course of a joint defense effort, and (2) the statements were designed to further that effort, and (3) the privilege has not been waived." *See Matter of Bevill, Bresler, and Schulman Asset Mgt.,* 805 F.2d 120, 126 (3rd Cir.1986).

Nonetheless, the court has sought to allow plaintiffs an opportunity to establish whether there is any basis for the underlying claim of invasion of attorney-client privilege. The court has thus undertaken to determine whether or not Luis DeCastro was a mole—i.e. whether the government wrongfully "invaded" the attorney-client privilege of the plaintiffs in *Dixon/Dufresne* by the use of DeCastro as a secret plant.

Plaintiffs have submitted the affidavit of Joe Izen, Jr., counsel for plaintiffs in *Dixon/Dufresne,* averring that: (1) Luis DeCastro met him at his Texas office to review records; (2) DeCastro attended a meeting with Izen prior to trial where DeCastro interviewed one of his clients; (3) Izen told DeCastro of his intention to introduce evidence of collection suits filed by Kersting to rebut the government's claim of invalid indebtedness; (4) Izen and DeCastro discussed other unspecified trial-related matters; (5) DeCastro sat next to Izen at trial; (6) DeCastro, at one point, grabbed legal authority from Izen's hand and read his trial notes; (7) Izen observed DeCastro talking to McWade (and wondered what was said); (8) DeCastro objected Izen's cross-examination of DeCastro's client and subjected Kersting to a hostile cross-examination using unspecified confidences that Izen had revealed to DeCastro; (9) DeCastro never revealed to Izen his client's settlement agreement with the government.

Assuming that Izen's statements are correct, it is still unclear whether or not DeCastro is a mole. Izen avers that he saw DeCastro talk to McWade, IRS district counsel, and "wondered about the topics being discussed." Izen's pondering is no basis for the court to conclude that DeCastro was sharing secrets. Plaintiffs have failed to establish that DeCastro shared any trial strategy, privileged attorney-client information, or other secrets with the government. Plaintiffs have thus not presented any proof that DeCastro passed any information to the IRS or any government agent.

The government has presented some evidence that DeCastro was not a mole. The court is presented with the affidavit of Luis DeCastro, averring that he did not breach plaintiffs' attorney-client privilege or otherwise act as a government mole at any time. The court is also presented with the affidavits of Kenneth McWade and William Sims, both of the IRS district counsel office, denying any breach of plaintiffs' attorney-client privilege. These affidavits present some evidence that DeCastro did not operate as a government mole.

The court also sought to allow plaintiffs an opportunity to adduce some evidence to contradict these affidavits. Accordingly, the court ordered the government to produce

documents relating to the settlement agreement with Thompson and DeCastro. The government filed some of these documents, to which plaintiffs have had access and, in addition, provided some documents to the court for *in camera* review. These reports, internal memoranda, and correspondence do not suggest in any way that DeCastro operated as a government mole.

The court also permitted plaintiffs to depose Luis DeCastro for the purposes of attempting to glean any statements which were inconsistent with the position taken in his affidavit. Plaintiffs chose not to ask DeCastro any questions about their allegations that he was a mole. Upon examination by the government, however, DeCastro was unequivocal:

> Q. [government counsel:] Mr. DeCastro, did anybody from the Internal Revenue Service ever ask you to provide them with any trial strategy, trial information or anything along those lines.
>
> A. [DeCastro:] Absolutely not.
>
> Q. Did you ever agree to provide any information to the Internal Revenue Service in connection with the Dixon trial?
>
> A. Absolutely not.
>
> .    .    .    .    .
>
> Q. You were never a plant for the Internal Revenue Service, were you, sir?
>
> A. No, sir. I have fought the Internal Revenue Service all of my life since 1958.

Deposition of Luis DeCastro, pp. 125, 133.

After careful review of the deposition, the court finds no evidence to support plaintiffs' allegations that DeCastro was a mole. To the contrary, it appears that DeCastro had no incentive to reveal any confidences to the government on the basis of the settlement agreement. The settlement agreement, after all, was contingent upon the government prevailing, and DeCastro had every incentive to press for an outright victory on his client's behalf. While the form of the settlement—including the payment of his fees by the IRS—was unusual, it does not, in and of itself, implicate DeCastro.

The court attempted to provide plaintiffs with a full opportunity to cross-examine De-

Castro. Plaintiffs, it appears, opted not to avail themselves of this opportunity. The court is thus left with the uncontradicted evidence that Luis DeCastro did not pass information to the government.

The court, having reviewed all of the evidence presented to it by plaintiffs and the government, concludes that plaintiffs have failed to establish that Luis DeCastro was a mole or that the government "invaded" their attorney-client privilege in any way.

II. *PLAINTIFFS' MOTION TO EXCLUDE EVIDENCE ON THE GROUNDS OF THE ILLEGALITY OF THE 1981 SEARCH WARRANT AND FAILURE OF THE GOVERNMENT TO OBTAIN A RULE 6(E) ORDER.*

A. *Illegality of the Search Warrant.*

■ Plaintiffs assert that the 1981 search warrant was obtained by the Internal Revenue Service (IRS) for both criminal and civil purposes.

The court notes that plaintiffs' have unsuccessfully raised this issue before. The government has attached as exhibits to its papers two court orders previously holding the search warrant to be valid: (1) in a September 1984 order, then U.S. District Judge Cynthia Holcomb Hall considered, *inter alia,* Kersting's argument that the search warrant was illegally used as a civil investigative tool and rejected it as wholly without merit; and (2) in a November 1986 order, Judge Belloni noted that Kersting was raising the same issues "as if Judge Hall's order was not issued." Judge Belloni refused to reconsider the issue.

While plaintiffs may not be collaterally estopped from raising this issue, the court is persuaded that they have not raised it in a timely manner. Plaintiffs' failure to bring this issue to the court's attention until after the commencement of trial is distressing.

Even if the court overlooks the untimeliness of this motion, there is nothing on the record to support plaintiffs' argument. Plaintiffs correctly point out that joint criminal and civil purposes are disfavored. *See United States v. LaSalle National Bank,* 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d

221 (1978); 26 U.S.C. § 7603. Plaintiffs offer no support, however, for the claim that the IRS sought to use a criminal search warrant for civil purposes. The court is presented with the affidavit of Stanley F. Krysa, Director of the Criminal Section of the Tax Division at Department of Justice at the relevant time, averring that the search warrant was issued because "there was probable cause to believe that a tax crime had been committed, and that ... evidence of criminal conduct was located in Henry Kersting's offices in Honolulu, Hawaii." Indeed, the court is persuaded that in seeking and executing the warrant, the government proceeded with expectations of obtaining a criminal indictment and without consideration of prosecuting a civil suit against plaintiffs.

### B. *Failure to Obtain a Rule 6(e) Order.*

██ Plaintiffs assert that the records obtained with the search warrant for a subsequent grand jury are tainted by their subsequent illegal dissemination to civil investigators in violation of Rule 6(e) of the Federal Rules of Criminal Procedure. The court is persuaded that plaintiffs failed to raise this issue in a timely manner. Nonetheless, the court will address this issue on the merits.

Rule 6(e) establishes a general prohibition (with certain exceptions) of disclosure by government attorneys of "matters occurring before the grand jury." Fed.R.Crim.P. 6(e); *see United States v. Dynavac, Inc.*, 6 F.3d 1407, 1411 (9th Cir.1993). The government has conceded that plaintiffs were the subjects of grand jury investigations and that there was no Rule 6(e) order allowing dissemination of grand jury materials for civil use.

Plaintiffs assert that much of the evidence upon which the government's case depends is grand jury material that was illegally disclosed to lawyers in the Civil Section of the Tax Division of the Department of Justice (DOJ). Relying on two Supreme Court decisions, *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983), and *United States v. Baggot*, 463 U.S. 476, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983), plaintiffs argue that documents presented to the grand jury were illegally disseminated to civil investigators.

In *Sells Engineering*, the Supreme Court held that grand jury materials could only be used by government attorneys for the limited use in the criminal matters to which those materials pertain. Attorneys from the Civil Section of the Tax Division of the DOJ sought and obtained access to grand jury materials from a criminal tax evasion and fraud investigation by the grand jury. The district judge who gave access to the grand jury materials did so without requiring a showing of particularized need. The Supreme Court thus held that disclosure of grand jury materials to other DOJ Civil Division attorneys for a possible False Claims Act suit was improper without a particularized showing of need.

Similarly, in *Baggot*, following a grand jury investigation (which did not result in indictment), the government moved for disclosure of "grand jury transcripts and documents" to the IRS for a civil tax investigation. 463 U.S. at 477, 103 S.Ct. at 3166. The Court held that Rule 6(e) prohibited disclosure of a taxpayer's testimony before the grand jury for purposes of determining his income tax liability. The Court held that, contrary to government arguments, such testimony was neither "preliminary to [n]or in connection with a judicial proceeding" and did not fall under an exception to Rule 6(e). *Id.* at 479–80, 103 S.Ct. at 3166–67. Accordingly, the Court held that disclosure of grand jury material to the IRS was inappropriate under the circumstances. *Id.* at 483, 103 S.Ct. at 3168–69.

Both *Sells Engineering* and *Baggot* affirm the secrecy of grand jury proceedings. Both cases stand for the principle that the government cannot use grand jury materials from one prosecution for a second distinct prosecution. The problem with this line of argument, however, is that plaintiffs have failed to establish that the material at issue in the case at bar actually constituted "grand jury material." In *Baggot*, the Court did not address what constitutes grand jury material. At least some of documents at issue in *Baggot*—grand jury transcripts—were plainly grand jury material. In *Sells Engineering*, the Supreme Court treated the documents at issue—referred to only as "certain

corporate records"—as "grand jury materials" without discussing the nature of their contents. *Id.* at 421, 103 S.Ct. at 3136–37. Nowhere in *Sells Engineering* did the Court address what constitutes "grand jury material."

In the absence of dispositive authority on the issue of what constitutes "grand jury material," the court might infer from *Sells Engineering* and *Baggot* that any corporate records (or other documents) considered by a grand jury constitute "grand jury material." The court, however, is not faced with a lack of clear authority on this question. To the contrary, the Ninth Circuit Court of Appeals addressed the issue squarely in *Dynavac,* defining exactly what constitutes "grand jury material." 6 F.3d at 1407.

In *Dynavac,* recipients of administrative summonses from an IRS agent protested the IRS request for production of company records on the grounds that the requested material had been previously disclosed to a grand jury and was, as such, protected "grand jury material." 6 F.3d at 1410–11. The Ninth Circuit disagreed, holding that business records which were independently generated and sought for legitimate purposes did not constitute "grand jury material." *Id.* at 1412.

In the instant case, the court is satisfied that the business records were created for purposes independent of grand jury investigations and that the government sought the documents for legitimate purposes. The government bears only the "slight" burden of proving that the summonses were (1) issued for legitimate purpose, (2) seeking information relevant to the purpose (3) which was not already in the possession of the IRS, and (4) that all of the administrative steps required by the Internal Revenue Code were satisfied. *See Dynavac,* 6 F.3d at 1414 (citing *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964)). The court is satisfied that the requirements of *Powell* were met in the instant case.

■■■ Plaintiffs have also suggested that the grand jury itself, like the search warrant, was conducted for improper criminal and civil purposes (or solely for covert civil purposes). As the Court noted in *Sells Engineering,* where criminal prosecution seems unlikely, use of a grand jury to elicit evidence for use in a civil case is improper per se. *Id.* 463 U.S. at 432, 103 S.Ct. at 3142 (citation omitted).

Under the facts of the instant case, the court is persuaded that all documents shown to the grand jury were sought for legitimate criminal purposes. Plaintiffs have failed to adduce any proof that criminal prosecution was unlikely in the instant case. To the contrary, the court has been given no reason to think that the government proceeded with its investigation of plaintiffs with anything other than good faith. The affidavit of Section Chief Stanley Krysa also attests to an ongoing criminal investigation during the relevant period of grand jury inquiries.

### IV. *PLAINTIFFS' MOTION TO STRIKE.*

Plaintiffs assert that the court erred by considering the affidavits of Luis DeCastro, Kenneth McWade, and William Sims, denying any breach of plaintiffs' attorney-client privilege. Plaintiffs ask the court to strike the affidavits of all three men, as well as the affidavit of Henry O'Neill, filed May 16, 1994, because the affiants declare, in the final sentence of each affidavit, that "under penalty of perjury [ ] the foregoing is true and correct *to the best of my knowledge and belief.*"

■■■ Plaintiffs assert that these unsworn declarations should not be considered by the court because they do not meet the verification requirements of 28 U.S.C. § 1746 and, consequently, are not subject—despite their use of the phrase "under penalty of perjury"—to the penalty of perjury. This argument is wholly without merit. As long as an unsworn declaration contains the phrase "under penalty of perjury" and states that the document is true, the verification requirements of 28 U.S.C. § 1746 are satisfied. *See Matter of Muscatell,* 106 B.R. 307, 308 (Bkrtcy.M.D.Fla.1989); *Nissho–Iwai American Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir.1988). The authority upon which plaintiffs rely for their argument, *Campbell v. Fort Worth Bank & Trust,* 705 S.W.2d 400 (1986), is unpersuasive and contrary to the

weight of authority. *Campbell* involved Texas state law and did not address the requirements of the applicable federal statute.

█ Plaintiffs assert that DeCastro's affidavit directly contradicts his deposition testimony. In his affidavit, DeCastro stated that he

> never sat in on trial strategy meetings or planning discussions with Joe Alfred Izen, Jr., Esq., L.T. Bradt, Esq., or Henry Kersting in connection with the trial preparation or trial of the test case litigation reported in *Dixon.*
>
> .  .  .  .  .
>
> In point of fact, I had no such information [pertaining to trial strategy or confidential information].

Declaration of Luis DeCastro, May 20, 1994, p. 3.

At his deposition, DeCastro testified as follows:

> Q. [plaintiffs' counsel:] Did you discuss [Joe Izen's] trial strategy?
>
> A. [DeCastro:] I'm sure we talked, of course.

Deposition of Luis DeCastro, pp. 125, 133.

While there is ostensibly some contradiction between DeCastro's declaration and his deposition, the remainder of DeCastro's deposition makes it clear that, as noted above, DeCastro unequivocally denies being privy to Izen's or Kersting's confidential information. After careful review of both documents, the court is satisfied that DeCastro's declaration is not fraudulent.

Accordingly, the court finds no basis to strike DeCastro's affidavit. Plaintiffs' motion to strike is DENIED.

## V. *PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE.*

### A. *Plaintiffs' Motion for an Order to Show Cause Against Luis DeCastro.*

█ Plaintiffs seek a court order requiring Luis DeCastro to appear as a witness in this case. The court has previously reopened discovery—over the government's objections—to permit plaintiffs to depose DeCastro.

The court has serious doubts as to whether it can exercise personal jurisdiction over Luis DeCastro. DeCastro is not a party to these proceedings. Rule 45 of the Federal Rules of Civil Procedure prohibits the court from compelling a non-party witness who resides outside of a 100 mile radius of the court from appearance at these proceedings. Accordingly, the court has no power to compel DeCastro's appearance.

Even if the court could compel DeCastro to appear, the court is persuaded to do so would be an exercise in futility. The court is presented with both the affidavit and the deposition transcript of DeCastro. DeCastro has consistently denied plaintiffs' allegations that he acted as a government mole. In light of the ample record, the court is convinced that there is nothing to gain from the in-court testimony of DeCastro.

### B. *Plaintiffs' Motion for an Order to Show Cause Against the Government.*

Plaintiffs also seek an order to show cause against the government as part of their "notice of fraud on the court." The court finds no basis whatsoever to support any of plaintiffs' allegations of government misconduct. Accordingly, the court DENIES plaintiffs' motion for an order to show cause against the government.

## CONCLUSION

For the reasons set forth above, the court DENIES plaintiffs' motion to reconsider the order denying the motion to disclose the extent of invasion of attorney-client privilege; DENIES plaintiffs' motion to reconsider the order denying plaintiffs' motion to exclude evidence on the basis of the illegality of the 1981 search warrant or the failure of the government to obtain a Rule 6(e) order; DENIES plaintiffs' motion to strike the affidavits of DeCastro, Sims, McWade, and O'Neill; and DENIES plaintiffs' motion for an order to show cause against DeCastro and the government.

IT IS SO ORDERED.